513 P.2d 1077 (1973)
A. Daniel ROONEY and Bette H. Rooney, Plaintiffs-Appellants,
v.
PEOPLES BANK OF ARAPAHOE COUNTY and H. J. Bleakley, Defendants-Appellees.
No. 72-040.
Colorado Court of Appeals, Div. II.
March 27, 1973.
Rehearing Denied May 8, 1973.
Certiorari Denied September 24, 1973.
*1078 A. Daniel Rooney, Aurora, for plaintiffs-appellants.
Leslie A. Gifford, Aurora, Grant, Shafroth, Toll & McHendrie, Charles H. Haines, Jr., Denver, for defendants-appellees.
Selected for Official Publication.
DWYER, Judge.
A. Daniel Rooney and Bette H. Rooney, plaintiffs-appellants will be referred to as the Rooneys. The Peoples Bank of Arapahoe County and H. J. Bleakley, defendants-appellees, will be referred to as the Bank.
The Rooneys brought this action to enjoin the Bank from the construction of a commercial building in violation of a building restriction in the plat of the subdivision in which the Bank's lot was located. The Bank answered and also moved for summary judgment on the grounds that plaintiffs, as the owners of property in a different subdivision, had no right to maintain the action. The court granted the motion, entered judgment for the Bank, and the Rooneys have appealed. We affirm the judgment.
Documents filed by the parties in support of and in opposition to the motion for summary judgment establish the following undisputed facts upon which the judgment rests.
The Bank is the owner of Lot 5 in Range View Subdivision in Arapahoe County. This subdivision was platted by W. E. Buchanan and Helen S. Buchanan on July 30, 1952. It is comprised of eight lots along the west side of Havana Street north of the intersection of Havana Street with Mississippi Avenue. On May 28, 1954, the Buchanans recorded certain "protective covenants" by which they subjected all of the lots of the subdivision, except Lot 8 which was reserved for commercial purposes, to covenants restricting construction on the lots to single family dwelling houses.
Range View Subdivision was a part of a larger tract of land owned by the Buchanans. On July 22, 1955, the Buchanans recorded a plat of another subdivision known as Range View, Second Filing.
*1079 The plaintiffs are the owners of Lot 9, Range View, Second Filing. The second subdivision consists of 17 lots and lies west of and adjacent to the first subdivision. The original plat of Range View, Second Filing contained no restrictive covenants, but, on April 2, 1956, the Buchanans and the grantees of 13 lots which had been sold entered into an agreement which subjected the property in the second filing to the same restrictive covenants applicable to the original subdivision. Subsequently, the Buchanans platted separately three additional subdivisions, all located within the land they owned when they filed the plat of the first subdivision. Covenants restricting the use of land to residential uses were recorded with respect to Range View, Fourth Filing. No restrictive covenants were filed with respect to Range View, Third Filing, or Range View, Fifth Filing.
The Bank's lot is one of seven of the lots contained in the first filing which were made subject to covenants restricting the use of those seven lots to erection and use of single family dwellings. These covenants ran with the land, and are binding upon later purchasers and owners of the seven lots.
The issue presented is whether the Rooneys, whose lots are located in the second subdivision, can enforce the covenants applicable to the first subdivision. This requires a determination of what persons are entitled to enforce the restrictive covenants applicable to Range View Subdivision if the covenants are violated by the owners of the property within the subdivision.
The instrument by which the restrictive covenant was created provided:
"If the parties hereto or any of them or their heirs or assigns shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situate in said subdivision to prosecute any proceeding at law or in equity against such person or persons first mentioned above and either to prevent his or them from so doing, or to recover damages or other dues for such violation."
From this language it is clear that the covenant was intended for the benefit of all of the lots within the first filing and that the covenant was enforceable by the original covenantee and by the grantees and owners of the lots within that subdivision.
The Rooneys contend the covenant is also enforceable by owners of lots in Range View, Second Filing, and by the owners of all the lots in the five subdivisions platted in the tract of land originally owned by the Buchanans. This contention is not based upon any provision contained in any deeds, plats, or instruments of record. The Rooneys, however, in an attempt to support their position cite the rule that restrictive covenants as to the use of real estate, which are a part of a general plan or scheme for the development of a tract of land and for the benefit of all the lots included in the tract, may be enforced by the owner of any lot in such tract against the owner of any other lot. The weight of authority recognizes this rule. E.g., Craven County v. First-Citizens Bank & Trust Co., Inc., 237 N.C. 502, 75 S.E.2d 620; Berger v. Van Sweringen Co., 6 Ohio St.2d 100, 216 N.E.2d 54; Edwards v. Surratt, 228 S.C. 512, 90 S.E.2d 906. See also cases collected in the annotations in 21 A.L.R. 1281, 33 A.L.R. 676, 60 A.L.R. 1223, and 89 A.L.R. 812. This rule is recognized in Colorado. In Judd v. Robinson, 41 Colo. 222, 92 P. 724, our Supreme Court quoting with approval Mulligan v. Jordan, 50 N.J.Eq. 363, 24 A. 543, stated the following:
". . . The right of grantees from the common grantor to enforce, inter sese, covenants entered into by each with said grantor, is confined to cases where there has been proof of a general plan or scheme for the improvement of the property, and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the party *1080 has bought with reference to such general plan or scheme, and the covenant has entered into the consideration of his purchase."
See also Taylor v. Melton, 130 Colo. 280, 274 P.2d 977; Seeger v. Puckett, 115 Colo. 185, 171 P.2d 415.
This rule is applicable to owners of lots within Range View Subdivision. It appears from the plat of the subdivision, and from the restrictive covenants applicable to the lots in this plat, that Range View Subdivision was developed under a general plan or scheme. However, the rule does not authorize owners of lots in subsequently platted subdivisions to enforce the covenants with regard to lots in other subdivisions unless all of the five subdivisions were developed as a part of a general plan or scheme for the development of the entire area.
The five subdivisions were developed as separate and distinct units. A separate plat was filed for each subdivision. The tract was not developed as a single contemporaneous unit. In similar factual situations, courts of other jurisdictions have held that where the grantor's entire tract of land is developed in separate sections and not as a single unit, there is no general plan or scheme which would permit owners in all the subdivisions to enforce restrictive covenants against each other. Reid v. Standard Oil Co., 107 Ga.App. 497, 130 S.E.2d 777; Edwards v. Surratt, supra; Craven County v. First-Citizens Bank & Trust Co., Inc., supra; Russell Realty Co. v. Hall, 233 S.W. 996 (Tex.Civ.App.).
In a proceeding for a declaratory judgment by lot purchasers to determine whether other lots were subject to certain use restrictions, the Georgia Court of Appeals in Reid v. Standard Oil Co., supra, considering the question of whether the subdivider intended a general plan of development, stated:
". . . [W]here the overall intent, as shown by plats, deed restrictions, and other like evidence, appears to be not to develop a subdivision as a single contemporaneous unit but to develop it progressively by sections, there is `an explicit intent not to create a uniform system of reciprocal easements applicable to all sections, but to develop a series of independent sections, each having its own restrictions benefiting only the lands in that section'."
In Russell Realty v. Hall, supra, where the grantor developed his land progressively by filing separate plats, the court held that owners of property in one subdivision could not enforce covenants against owners in another subdivision. The court stated:
"The covenant under which they bought extended only to lots in the first Melrose addition. As to all lots in this section the restrictive covenant is mutually binding between all purchasers and between each of them and the original owner who sold them with reference to a general building scheme. But purchasers' rights under restrictive covenants relating to lots in this first plat cannot be extended beyond its borders. They are circumscribed and confined by the territorial limits of the plat with reference to which the purchasers bought, and purchasers cannot be granted relief against the construction of buildings of an obnoxious kind in an adjoining section, even though such buildings are constructed in violation of restrictive covenants, which apply to the adjoining territory."
The Rooneys' contention that all five subdivisions were developed according to a general plan or scheme which would permit property owners in all of the subdivisions to enforce the covenants against each other is not supported by the documents submitted by the parties on motion for summary judgment. Under these circumstances, the trial court properly found that the right to enforce the restrictive covenants in Range View Subdivision is limited to owners of land in that subdivision.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.