Fred R. SCHNEIDER; and Fred R. Schneider and Helen V. Schneider as co-trustees of Trust One and Trust Two of the Phillip and Helen Schneider 1986 Trust, dated December 13, 1986, Plaintiffs–Appellants and Cross–Appellees,

v.

Wayne DRAKE and Betsy Drake, Defendants–Appellees and Cross–Appellants,

and

Gary Moore, Judith Moore, Peggy Snyder, Herbert and Edna Williams, Barron Harris, Jr., Robert Wood, Wendy Wood, David Storter, and Melanie Storter, Defendants–Appellees.

No. 00CA1212.

Colorado Court of Appeals, Div. V.

July 19, 2001.

Certiorari Denied April 8, 2002.*

---

* Justice KOURLIS and Justice BENDER would grant as to the following issue:

Whether a court, when interpreting multiple amendments to restrictive covenants that became effective at the end of an initial twenty-year period, should consider the amendments in the order in which they were recorded.

Whether an amendment to restrictive covenants that withdraws and releases certain lots from the existing restrictive covenants of that subdivision prevents the remaining members of that subdivision from later adopting another amendment to bring the excluded lots back within the scope of the restrictive covenants.

Whether the court of appeals erred in denying Respondent's recovery of their attorney fees.

Dufford, Waldeck, Milburn & Krohn, LLP, Nathan A. Keever, Grand Junction, CO, for Plaintiffs–Appellants and Cross–Appellees.

Overholser & Slee, P.C., Andrew J. Slee, Montrose, CO, for Defendants–Appellees and Cross–Appellants.

Brooks & Brooks, LLC, John A. Brooks, Montrose, CO, for Defendants–Appellees.

Opinion by Judge TAUBMAN.

In this dispute concerning the right to create additional lots in a subdivision, plaintiffs, Fred R. Schneider, in his individual capacity, and Helen V. Schneider and Fred R. Schneider as co-trustees of Trust One and Trust Two of the Phillip and Helen Schneider 1986 Trust (Schneiders), appeal the judgment prohibiting or limiting further subdividing and awarding defendants attorney fees. Defendants Wayne and Betsy Drake (Drakes) cross-appeal a portion of the judgment, including the grant of limited equitable relief to the Schneiders. Defendants Gary and Judith Moore, Peggy Snyder, Herbert and Edna Williams, Barron Harris, Jr., Robert and Wendy Wood, and David and Melanie Storter (Moores) request that we affirm the judgment in its entirety. We affirm in part and reverse in part.

There are five documents central to the issues in dispute: 1) 1976 Protective Covenants for the M.E.B. Subdivision (M.E.B. Covenants); 2) 1977 amendments; 3) a 1995 amendment; 4) a 1996 amendment; and 5) a 1995 permanent injunction entered in prior litigation between the Schneiders and the Drakes, which prohibited further subdividing.

In 1976, the owners of the M.E.B. Subdivision, then consisting of seven lots, filed and recorded the M.E.B. Covenants. Paragraph three of those covenants provided, "No lot shall be resubdivided into smaller lots or parcels of land to obtain additional building sites." The covenants further provided that they would be effective for twenty years and then would be renewed automatically for ten-year periods, unless the lot owners sought to amend them. Also, the owners of the lots, by majority vote, could modify or nullify the covenants by amendment before the expiration of the twenty-year period, and such amendment would be valid after that period expired.

One year later, in 1977, the lot owners of at least six lots signed amendments to the M.E.B. Covenants. The amendments, *inter alia*, deleted paragraph three, the quoted prohibition of further subdividing. The parties did not record these amendments as required by the covenants.

At that time, the Schneiders owned five of the seven lots in the M.E.B. Subdivision, Lots 3, 4, 5, 6, and 7. After the 1977 amendments were signed, the Schneiders began subdividing Lot 3 to create the Schneider M.E.B. Subdivision. This new subdivision created five lots on Lot 3 and the final plat was recorded. In addition, the Schneiders filed a second plat, creating a sixth lot on Lot 3, and further subdividing Lots 4 through 7. The Schneiders did not carry out their plans to subdivide part of Lot 3, and Lots 4, 5, 6, and 7 until 1994. In about 1980, the original owner of Lot 1 subdivided that lot into Lot A and Lot B. All of this subdividing was done in apparent violation of the original M.E.B. Covenants, because the 1977 amendments were not recorded.

In 1994, before the end of the twenty-year period, the Schneiders began once more to develop the Schneider M.E.B. Subdivision in accordance with the plans recorded in 1977.

On January 23, 1995, Helen V. Schneider and eight other individuals signed an amendment to the M.E.B. Covenants, which was intended to make the covenants inapplicable

to Lots 3, 4, 5, 6, and 7 of the M.E.B. Subdivision, effective at the end of the twenty-year period. The nine individuals who signed the amendment constituted a majority of the lot owners of the original seven lots, as well as a majority of all the lot owners at that time. This amendment was recorded on February 9, 1995.

Two weeks later, the Drakes obtained a permanent injunction against the Schneiders, prohibiting them from further subdividing their property in violation of the M.E.B. Covenants.

In January 1996, before the end of the twenty-year period, fourteen individuals signed and recorded an amendment to the M.E.B. Covenants, "cancel[ling] and annul[ling] all previous purported amendments." This amendment was intended to nullify the 1995 amendment and make effective the original M.E.B. Covenants that prohibited further subdividing.

In 1997, the Schneiders brought a declaratory judgment action, seeking a determination that the 1995 amendment was valid, that the 1996 amendment was invalid, and that for equitable reasons, the M.E.B. Covenants were no longer operative. The Drakes and the Moores each filed an answer and counterclaims against the Schneiders, seeking injunctive relief, clarification or declaration of the significance of the 1995 permanent injunction, and attorney fees.

The trial court concluded that: 1) the 1977 amendments were invalid because they were not recorded; 2) the 1995 and 1996 amendments were void *ab initio;* 3) under the doctrine of equity, the Schneiders could continue to subdivide Lot 3, but not Lots 4, 5, 6 or 7; and 4) defendants were the prevailing parties and, thus, were entitled to attorney fees.

This appeal and cross-appeal followed.

## I. Validity of Amendments

The Schneiders argue that the trial court erred in invalidating the 1977 and 1995 amendments. On cross-appeal, the Drakes assert that the trial court erred in concluding that the 1996 amendment was void *ab initio,* and they maintain that the trial court determined correctly that the 1977 and 1995 amendments did not permit further subdividing by the Schneiders. Although the Moores did not respond to the Drakes' cross-appeal, they contend that we should affirm the judgment in its entirety. We agree with the Drakes.

Construction of a covenant is a question of law that requires *de novo* review. *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.,* 21 P.3d 860, 862 (Colo. 2001). When interpreting a restrictive covenant that is definite in its terms, courts must "follow the dictates of plain English." *Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n,* 773 P.2d 1046, 1048 (Colo.1989)(quoting *D.C. Burns Realty & Trust Co. v. Mack,* 168 Colo. 1, 4, 450 P.2d 75, 76 (1969)).

Courts construe covenants as a whole, keeping in mind their underlying purpose. When a covenant is clear on its face, courts will enforce it as written. *Buick,* 21 P.3d at 862.

Because we conclude that the 1996 amendment was properly adopted, we need not address the parties' contentions concerning the validity of the 1977 and 1995 amendments. However, we note that contrary to the Drakes' contention, the issue of whether the 1995 amendment is valid is not barred by the doctrine of *res judicata.* In the previous litigation, the trial court concluded that the issue was not ripe, because the 1995 amendment could not become effective until 1996. Thus, the issue was not fully litigated there, and *res judicata* does not bar the present litigation. *See Steamboat Springs Rental & Leasing, Inc. v. City & County of Denver,* 15 P.3d 785 (Colo.App.2000).

### A.

The Schneiders argue that the 1996 amendment was invalid because it did not contain the signatures of the owners of a majority of the original seven lots. We disagree.

The M.E.B. Covenants required that an amendment must be executed by the "then owners of the majority of the lots."

■ First, the term "then owners" necessarily refers to the existing owners of lots at the time of the 1996 amendment. If the drafters of the covenants had intended otherwise, they would have used language such as "by a majority of the owners of the original seven lots."

■ Further, the original M.E.B. Covenants contemplated that they could be amended under certain circumstances so as to allow subdividing. Here, although the 1977 amendments were not recorded, the owners of the lots in the M.E.B. Subdivision proceeded on the assumption, based upon those amendments, that subdividing was no longer prohibited. Indeed, the Drakes and the Moores lived on Lots A and B, which originally had constituted Lot 1, and there were six separately owned residences on the original Lot 3.

Although the subdivision of Lots 1 and 3 was in violation of the covenants, it occurred with the acquiescence of the owners of all the lots in the subdivision. Given this de facto resubdivision and acquiescence, the subdivision now consists of fourteen lots. To view the subdivision in any other way would deprive the two present owners of lots on the original Lot 1 and the six present owners of lots on the original Lot 3 of the full benefits of the covenants, including the right to vote on amendments.

Here, under this interpretation, the 1996 amendment was approved by a majority. At that time, there were fourteen lots in the M.E.B. Subdivision; therefore, eight lots constituted a majority. The owners of nine lots signed the 1996 amendment, thus constituting owners of a majority of the lots in the subdivision at that time.

Further, even if we were to assume that the covenants required approval by a majority of the owners of the original seven lots, the 1996 amendment was still valid. When the 1995 and 1996 amendments were approved, there were seventeen individual lot owners, and fourteen of those lot owners signed the 1996 amendment. They also constituted a majority.

Even if we were to agree with the Schneiders' contention that one signature on the 1996 amendment was invalid, there still would be sufficient signatures to establish the necessary majority under either approach.

Thus, we conclude that the 1996 amendment was valid.

### B.

The Drakes assert that the trial court erred in concluding that the 1996 amendment was void *ab initio*. We agree.

In 1995, the owners of ten lots signed an amendment purporting to release the Schneiders from the restrictive covenants. We note that the Schneiders owned five of those ten lots and that four lot owners did not agree with or sign that amendment.

In 1996, the owners of nine lots, which included all lots except those owned by the Schneiders, signed a different amendment intended to nullify the 1995 amendment. This amendment made effective again the original M.E.B. Covenants prohibiting further subdividing.

Thus, between 1995 and 1996, the owners of five lots changed their minds regarding the 1995 amendments. The 1996 amendment "cancels and annuls all previous purported amendments. Particularly, this amendment cancels and annuls the purported amendment to Protective Covenants for M.E.B. Subdivision recorded February 8, 1995 ...." Because all of the lot owners except the Schneiders signed the 1996 amendment, that document manifested a clear intention of the majority of property owners or owners of a majority of the lots to affirm the original M.E.B. Covenants in their entirety and annul the purported 1995 amendment.

Furthermore, neither the 1995 amendment nor the 1996 amendment, which was adopted on January 25, 1996, became effective until January 26, 1996, the date the original twenty-year period expired. *See Johnson v. Howells,* 682 P.2d 504 (Colo.App.1984)(amendments not effective until end of initial twenty-year period).

■ Because the amendments became effective at the same time, they must be read together in order to discern the actual intent

of the parties. *Cf. Perkins v. B & W Contractors, Inc.,* 439 So.2d 652, 656 (La.Ct.App.1983)(signatures of owners purporting to revoke amendments were ineffective because they occurred after effective date of amendments). So construed, the 1996 amendment effectively overrode the 1995 amendment.

Finally, we disagree with the Schneiders' contention that the 1996 amendment could not make their lots subject to the M.E.B. Covenants after those lots had been withdrawn from the coverage of the covenants pursuant to the 1995 amendment. *Rooney v. Peoples Bank,* 32 Colo.App. 178, 513 P.2d 1077 (1973), on which they rely, is distinguishable.

In *Rooney,* a division of this court concluded that the restrictive covenants of a subdivision could not be enforced by a member of a neighboring subdivision. The court noted that, unlike here, at no time was there a general plan or scheme common to all of the subdivisions, and without such a common plan, property owners in one subdivision could not enforce the covenants of a neighboring subdivision. Here, we are presented with competing amendments within a subdivision that has a common plan; therefore, we conclude that *Rooney* is inapplicable.

Additionally, contrary to the Schneiders' contention, the 1995 amendment did not permit them to withdraw from the subdivision; rather, it attempted to release them from the original M.E.B. Covenants. Therefore, the Schneiders' lots were never withdrawn from the subdivision and continued to be subject to the original M.E.B. Covenants and subsequent amendments.

Although we disagree with the trial court that the 1996 amendment was void *ab initio,* we reach the same conclusion that the M.E.B. Covenants control. *See Barham v. Scalia,* 928 P.2d 1381, 1386 (Colo.App.1996)(a correct judgment may be affirmed based upon reasoning different from that of the trial court). Consequently, we agree with the trial court's determination that the amendments did not permit the Schneiders to subdivide further.

## II. Equitable Relief

■ Next, both the Schneiders and the Drakes argue that the trial court did not apply the correct standard in determining whether the Schneiders were entitled to equitable relief. The Schneiders assert that they were entitled to broad equitable relief, while the Drakes maintain that the trial court abused its discretion in granting even limited equitable relief to the Schneiders. The Moores contend that the trial court applied the correct standard and urge us to affirm the limited equitable relief granted to the Schneiders. We agree with the Moores.

■ The power to fashion equitable remedies lies within the discretion of the trial court, and such rulings will not be disturbed on appeal absent an abuse of discretion. *La Plata Medical Ctr. Assocs., Ltd. v. United Bank,* 857 P.2d 410, 420 (Colo.1993). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Margenau v. Bowlin,* 12 P.3d 1214, 1216 (Colo.App.2000).

■ Both the Schneiders and the Drakes assert that the trial court erred in not applying the test set forth in *Zavislak v. Shipman,* 147 Colo. 184, 362 P.2d 1053 (1961). There, the supreme court held that a court may exercise its equitable powers when a restrictive covenant no longer serves the purpose for which it was imposed or when the circumstances have changed and the enforcement would impose an oppressive burden without any substantial benefit. *Id.* at 187–88, 362 P.2d at 1055.

We disagree with the Schneiders and the Drakes that the trial court did not apply the standard set forth in *Zavislak.* Although the court did not cite *Zavislak* in its opinion, *Zavislak* was cited to the trial court in all three of the parties' trial briefs. Therefore, the court was aware of the *Zavislak* test, and we conclude that it followed *Zavislak* in making its equitable determinations.

Here, the trial court denied the Schneiders' request for equitable relief for Lots 4, 5, 6, and 7 because they failed to show "any change of circumstances sufficient to allow removal of their property from the protective covenants." In addition, the court noted that

all of the other property owners wanted the protective covenants to remain in effect for "their mutual protection, enforcement and beneficial use of their property." Thus, the court also concluded that the M.E.B. Covenants continued to serve the purposes for which they were imposed.

The trial court did not abuse its discretion in devising an equitable remedy that incorporated all of the parties' concerns. The court permitted the Schneiders to finish developing Lot 3, which had already been subdivided into six lots. The court stated that the Schneiders had created a street and installed some utilities in anticipation of further subdividing. Furthermore, the court noted that a majority of the lot owners realized that further subdividing might take place.

We conclude that the court did not abuse its discretion in upholding the original covenants and refusing to grant the Schneiders equitable relief allowing them to subdivide Lots 4, 5, 6, and 7. We also conclude that the trial court did not abuse its discretion by failing to provide relief based on equitable estoppel to the Schneiders because, after approval of the 1995 Amendment, they gave up their irrigation water rights. As stated above, the court carefully weighed the factors set forth in *Zavislak v. Shipman* and concluded that the Schneiders were not entitled to such equitable relief.

### III. Attorney Fees

Finally, the Schneiders contend that the trial court erred in awarding defendants attorney fees, because the Schneiders merely sought declaratory relief and were not violating or threatening to violate the M.E.B. Covenants. We agree.

The M.E.B. Covenants provide that the owners of any lot may institute a claim against "any person . . . violating or threatening to violate the covenants." In addition, according to the covenants, the prevailing party "shall be entitled to recover reasonable attorney's fees."

As stated above, when a covenant is clear on its face, courts will enforce it as written. *Buick,* 21 P.3d at 862.

Here, in their complaint, the Schneiders sought declaratory relief to determine the status of Lots 3 through 7 in light of the conflicting 1995 and 1996 amendments. They took no action before or after filing their complaint to develop their proposed subdivision further. Therefore, they did nothing that violated or threatened to violate the covenants.

Although, in their counterclaims, defendants sought injunctive relief prohibiting the Schneiders from further subdividing in violation of the M.E.B. Covenants, this allegation alone is insufficient to demonstrate that the Schneiders were violating or threatening to violate the covenants.

Accordingly, we conclude that the trial court erred in awarding defendants attorney fees.

Because of our disposition, we decline to address the Schneiders' contention that the trial court also erred in awarding defendants attorney fees because they were not the prevailing party, as required by the M.E.B. Covenants.

The judgment is reversed as to the award of attorney fees and affirmed in all other respects.

Judge KAPELKE and Judge NIETO concur.