**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FELIX A. DEJEAN, III; CAROLYNE
DEJEAN,

     Plaintiffs - Appellees,

v.

COLLEEN A. GROSZ, as Trustee of the
Declaration of Trust for Benefit of Colleen
A. Grosz, dated 8/11/1989; TIMOTHY C.
RODELL, an individual; MARJORIE M.
RODELL, an individual,

     Defendants - Appellants.

No. 14-1490
(D.C. No. 1:13-CV-02381-BNB-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

     The district court entered declaratory judgment favoring Felix and Carolyne

DeJean, ruling that the long-time existence of a non-conforming duplex extinguished

neighboring property owners' rights to enforce a single-family dwelling title

restriction. The neighbors—Colleen Grosz, and Timothy and Marjorie Rodell—

appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm as to the DeJeans'

claim seeking declaratory judgment against the Rodells. However, we reverse as to

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the DeJeans' claim seeking a declaration against Grosz because that claim is barred by res judicata principles.

**I**

In 1957, a developer transferred title to a parcel of land ("Lot 5") subject to a restriction that but only one single family residential dwelling be constructed on the lot, consistent with similar restrictions in the subdivision. Despite this restriction, a duplex was constructed by a subsequent owner, and has stood on Lot 5 since at least 1979—the year that condominium covenants were recorded on the property. The Rodells bought a contiguous lot in 1994. Grosz bought one unit of the Lot 5 duplex in 1995. The DeJeans bought the other unit in 2000. Each unit is owned in fee simple as a condominium under Colorado law. Common elements are shared by the two owners as tenants in common.

In 2006, Grosz and her neighbor, the Rodells, sued yet another neighborhood homeowner in Colorado state court to enforce a building-height deed restriction. After being joined in that action by the defendant, the DeJeans filed a counter-claim against Grosz and the Rodells seeking a declaration that the Lot 5 single-family deed restriction was unenforceable. Initially, the state court granted summary judgment to the DeJeans based on adverse possession. On motion for reconsideration, the state court reversed course and determined the DeJeans were not entitled to summary judgment because "there is no adversity in interest between the DeJeans and Grosz." Specifically, the state court held that the DeJeans and Grosz were "tenants in common in Lot 5 and its common areas" and thus "the DeJeans cannot claim adverse

-2-

possession against Grosz in the absence of an ouster." The state court also held that the "DeJeans cannot claim adverse possession against the Rodells . . . because the eighteen year statutory limitations period for adverse possession has not been satisfied." In 2013, the state court closed the case. The parties agree that the state court judgment was final as to the DeJeans, and that the DeJeans did not appeal.

After the state court entered final judgment, and after the eighteen-year statutory period for adverse possession had run against both Grosz and the Rodells, the DeJeans filed this federal action asking the district court to declare that neither Grosz nor the Rodells may enforce the Lot 5 single-family deed restriction.[1] The district court rejected Grosz's res judicata defense, observing that although "[t]he state court did not address ripeness as to Ms. Grosz . . . the DeJeans' adverse possession claim was not ripe as to Ms. Grosz for the same reason it was not ripe as against the Rodells." The district court reasoned that "because the DeJeans' adverse possession claim was not yet ripe as to Ms. Grosz, the state court's ruling regarding ouster is dicta, and the DeJeans may assert in this action their adverse possession theory against Ms. Grosz." It held that Colorado law does not require ouster to eliminate a servitude through adverse possession, and that the DeJeans met all the requirements necessary to modify Grosz's and the Rodells' right to enforce the deed restriction. Thus, the district court granted declaratory judgment favoring the

---

[1] As the district court noted, it is not apparent why the DeJeans did not seek to quiet title to remove or cancel the single-family restriction as a cloud on their title. See Zavislak v. Shipman, 362 P.2d 1053, 1055 (Colo. 1961). Regardless, the DeJeans' arguments are specific to Grosz and the Rodells, and we consider only whether these defendant-appellants may enforce the title restriction.

DeJeans, ruling that the defendants' rights to enforce the single-family restriction had been extinguished through adverse possession. Grosz and the Rodells timely appealed.

## II

Grosz argues that the DeJeans' adverse possession claim against her in federal court is precluded by the previous state court order. Whether res judicata bars a claim is a question of law which we review de novo. Satsky v. Paramount Commc'ns, Inc., 7 F.3d 1464, 1467-68 (10th Cir. 1993). To determine the preclusive effect of a state court judgment in a subsequent federal lawsuit, we refer to the preclusion law of the state in which the prior judgment was rendered. Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

Under Colorado law, a claim in a second judicial proceeding may be precluded by a previous judgment if there exists: "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions." Argus Real Estate, Inc. v. E-470 Pub. Highway Auth., 109 P.3d 604, 608 (Colo. 2005). The parties agree that the first, second, and fourth prongs of this test are satisfied. Thus, the sole disputed issue before us is whether there exists identity of claims for relief. The "same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies." Id. at 609 (quotation omitted). However, the doctrine of res judicata does not bar claims that were not ripe

or mature in the first proceeding. See Schneider v. Drake, 44 P.3d 256, 259 (Colo. App. 2001); Argus, 109 P.3d at 614 (Kourlis, J., dissenting).

The DeJeans argue that the claims against Grosz were not "ripe" in the first proceeding because the limitations period had not yet run,[2] and thus the state court judgment does not have a preclusive effect. Although the state court held that the DeJeans could not pursue their claims against the Rodells because the statutory period had not yet run, it made no similar ruling as to Grosz. With respect to Grosz, the state court ruled on the merits that "there is no adversity in interest between the DeJeans and Grosz" and "the DeJeans cannot claim adverse possession against Grosz in the absence of an ouster."

Urging us to disregard this holding, the DeJeans argue that if their adverse possession claim was premature as to the Rodells it must also have been premature as to Grosz. But the only Colorado case we have found that rejects res judicata on ripeness or maturity grounds relied on the fact that "the [first] trial court concluded

---

[2] The parties misuse the term "ripe." In Colorado, the ripeness doctrine "requires an injury to be sufficiently immediate and real in order to warrant adjudication." Stell v. Boulder Cty. Dep't of Soc. Servs., 92 P.3d 910, 914 (Colo.), as modified on denial of reh'g (July 12, 2004). Courts generally "will not consider uncertain or contingent future matters because the injury is speculative and may never occur." Id. at 914 (quotation omitted). The state court expressly found that the DeJeans had suffered a non-speculative injury at the time of that suit based on a potential buyer's withdrawal of an offer to purchase the DeJean's unit because of the single-family restriction. Whether the DeJeans proved possession for the statutory period before filing suit is simply an element of an adverse possession claim. See Matoush v. Lovingood, 177 P.3d 1262, 1265 (Colo. 2008). This merits issue is distinct from the question of ripeness. To avoid confusion, we will use the term premature to refer to an adverse possession claim filed before the statutory period has run.

-5-

that the issue was not ripe" and thus "the issue was not fully litigated." Schneider, 44 P.3d at 259.[3] Thus, state precedent suggests a claim is precluded unless the prior court made an express holding as to ripeness or maturity. Unlike the claim at issue in Schneider, the DeJeans' claim seeking to invalidate the title restriction was fully litigated and decided on the merits.

We harbor doubts about the accuracy of the state court's ruling that ouster is required under the circumstances present in this case. But accuracy of a prior ruling is irrelevant to the res judicata analysis. Lobato v. Taylor, 70 P.3d 1152, 1166 (Colo.), as modified on denial of reh'g (June 16, 2003) ("[T]he res judicata consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong." (quotation and emphasis omitted)). Rather, our analysis begins and ends on the factual predicate that the holding as to ouster finally resolved the adverse possession claim against Grosz.

Similarly, we may not reject the state court's ouster ruling as dicta or otherwise peripheral to the issues that were actually adjudicated in the state court action. The state court's sole reason for rejecting the DeJeans' adverse possession

---

[3] The only other Colorado opinion discussing this exception is a dissent, which states without citation that "Colorado courts have held that a claim is not barred by principles of claim preclusion when the claim is not ripe or mature at the time the first case is pleaded." Argus, 109 P.3d at 614. We thus have little support for the proposition that this exception applies to both premature and unripe claims. Because we conclude that the state court did not dismiss the DeJeans' claim against Grosz on either ground, we will assume that the exception governs both premature and unripe claims.

claim against Grosz was a lack of adversity absent ouster.[4]  And the state court's

orders were not tentative:  the parties had an opportunity to be heard, and there was

an opportunity for review.  See Carpenter v. Young ex rel. Young, 773 P.2d 561, 568

(Colo. 1989) (setting forth requirements of preclusive judgment).

The DeJeans also contend that the state court order should not be given

preclusive effect because a direct appeal of the prior ruling as to Grosz would have

been futile.  They argue that the ouster holding was unappealable dicta because the

claim was not mature.  As discussed supra, this characterization is erroneous.  The

state court's ouster ruling was the only holding as to Grosz; it cannot be dismissed as

dicta.  See Yost v. Stout, 607 F.3d 1239, 1244 n.6 (10th Cir. 2010) ("A holding

consists of those propositions along the chosen decisional path or paths of reasoning

that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to

the judgment." (quotation and emphasis omitted)).

Finally, the DeJeans assert that Colorado courts allow successive declaratory

judgment actions, citing Atchison v. City of Englewood, 506 P.2d 140 (Colo. 1973).

In Atchison, the court held only that a "declaratory judgment . . . does not constitute

an absolute bar to subsequent proceedings where the parties are seeking other

remedies."  Id. at 143 (emphasis added).  However, the DeJeans now seek the same

---

[4] In a subsequent order, the state court noted that "the DeJeans cannot prevail
under adverse possession because there is no ouster of Grosz and the statutory
limitations period for adverse possession has not expired."  Read in context, this
order restates the state court's previous conclusions that the claim against Grosz
failed for lack of ouster, and the claim against the Rodells failed because it was
premature.

relief they pursued in state court: a declaratory judgment indicating that the single-family restriction on Lot 5 is unenforceable. The DeJeans argue against the limitation in Atchison by citing to the Restatement of Judgments for the proposition that a stand-alone request for declaratory relief does not bar further declaratory relief. See Restatement (Second) of Judgments § 33 cmt. c. But the Restatement provides that a "plaintiff who has lost a declaratory judgment action may . . . bring a subsequent action for other relief, subject to the constraint of the determinations made in the declaratory action." Id. (emphasis added). It follows that the DeJeans may not bring a subsequent claim for declaratory relief identical to the claim the state court rejected and premised on the same argument.

For the foregoing reasons, we conclude that the DeJeans' claim as to Grosz is barred by principles of res judicata.

### III

Unlike Grosz, the Rodells do not invoke a res judicata defense. Because the doctrine of res judicata is not jurisdictional, see Horwitz v. State Bd. of Med. Exam'rs, 822 F.2d 1508, 1512 (10th Cir. 1987), we do not consider it as to the DeJeans' claim against the Rodells. Instead, we address the Rodells' appeal on the merits. We review the district court's grant of summary judgment de novo. Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009).

The Rodells argue that the single family restriction is a "building" restriction, not a "use" restriction, and that a building restriction is not extinguishable through prescription. In support of this argument, they cite Double D Manor, Inc. v.

Evergreen Meadows Homeowners Ass'n, 773 P.2d 1046 (Colo. 1989). In Double D, the court considered whether use of a single family structure as a residential child care facility violated a single-family deed restriction. Id. at 1047. The court concluded that the restriction governed only the type of building that could stand on the property, but did not govern the use of that building. Id. at 1050.

Double D offers little guidance to the present situation. Unlike the compliant structure in Double D, the duplex on Lot 5 is not a single family residence and thus unambiguously violates the restriction. Further, Double D does not address adverse possession. In Colorado, the law of adverse possession applies to "any right or interest of or to real property." Matoush, 177 P.3d at 1269 (quotation omitted). The Rodells do not identify any contrary authority with respect to building restrictions. They cite to a restatement provision indicating that "[t]o the extent that a use of property violates a servitude burdening the property and the use is maintained adversely to a person entitled to enforce the servitude for the prescriptive period, that person's beneficial interest in the servitude is modified or extinguished." Restatement (Third) of Prop.: Servitudes § 7.7. Yet, the Rodells do not identify any authority supporting their assertion that a building restriction is not a restriction on the "use" of a lot as that term is used in the Restatement. Several of the illustrations illuminating § 7.7 indicate that building restrictions are included. See id. illus. 2 (restriction prohibiting nonresidential use may be proscribed by maintenance of commercial structure); id. illus. 3 (section applies to covenant that prohibits

construction of a two-story residence).  We thus conclude, in Colorado, a building restriction is terminable through adverse possession.

To terminate a servitude through adverse possession in Colorado, the use of the burdened property must be:  (1) adverse to the servitude beneficiary's rights; (2) open and notorious; and (3) continuous without effective interruption for the statutorily mandated period of time.  See Matoush, 177 P.3d at 1265.  A use is adverse if it is "incompatible or irreconcilable" with the servitude beneficiary's rights.  Id.  "A use is open and notorious if it is sufficiently obvious to apprise the owner . . . that another is making use of the burdened land so that the owner may object."  Olson v. Hillside Cmty. Church SBC, 124 P.3d 874, 880 (Colo. App. 2005) (quotation omitted).  The statutory period for adverse possession in Colorado is eighteen years.  Matoush, 177 P.3d at 1269 (citing Colo. Rev. Stat. § 38-41-101(1)).

We agree with the district court that the maintenance of a duplex on Lot 5 since 1979 meets each of these requirements.  Such use is incompatible with the appellants' right to enforce the single family restriction and has been open and notorious.  It has also been maintained continuously for more than the eighteen-year statutory period which began when common ownership of Lot 5 and the Rodells' parcel was severed on February 18, 1994, and terminated on February 18, 2012.  See Salazar v. Terry, 911 P.2d 1086, 1089 (Colo. 1996) (adverse possession period begins to run as of date property interest is separated from common ownership).  The Rodells challenge the third prong.  They contend that the eighteen-year period has

not yet commenced because they have not yet attempted to enforce the restriction.[5]

See Matoush, 177 P.3d at 1271 ("When an easement is created but never used, . . . use of the easement area, even in a way that prevents use of the easement, is not adverse and will not trigger the statutorily-mandated period of time for adverse possession until the easement holder needs to use the easement, demands to use it, and is refused the right to use it."). Appellants' reliance on Matoush is misplaced. In that case, the court observed that the unique rule regarding dormant easements "does not create a new element for claims to terminate an easement by adverse possession," but "informs a court's inquiry as to the element of adversity." Id. at 1273. "[W]hether use of the easement area is an incompatible or irreconcilable use sufficiently adverse to trigger the statutorily-mandated period of time for adverse possession depends upon the circumstances of each case." Id. at 1271. Because the duplex on Lot 5 is wholly incompatible with the single family restriction—unlike the dormant easement scenario considered in Matoush—it was not necessary for the neighbors to attempt to enforce the restriction to trigger the statutory period.

The DeJeans have fulfilled the elements of adverse possession, and thereby the Rodells' right to enforce the single family title restriction has been terminated.[6]

_____

[5] In the previous state court action the Rodells sought to protect their right to enforce the single family restriction, but they did not attempt to enforce the restriction.

[6] Although we recognize the unusual result of this case is to affirm the grant of declaratory judgment as to two defendants and reverse as to a third on essentially the same claim, the Supreme Court has explained that we do not recognize any "general equitable doctrine . . . which countenances an exception to the finality of a party's

-11-

**IV**

The district court erred in holding that the state court judgment denying the DeJeans' adverse possession claim against Grosz for lack of adversity was dicta. To the contrary, the state court ruled on the merits of the DeJeans' adverse possession claim against Grosz, and the DeJeans' adverse possession claim against Grosz in federal court is barred by principles of res judicata. We thus **REVERSE** the declaratory judgment that Grosz may not enforce the single-family title restriction on Lot 5, and **REMAND** with instructions to dismiss the claim against Grosz. The state court judgment is thereby honored. Because the Rodells do not advance a res judicata defense and the DeJeans have fulfilled all elements of adverse possession, the declaratory judgment of the district court that the Rodells may not enforce the Lot 5 restriction is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

failure to appeal merely because his rights are closely interwoven with those of another party." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 400 (1981) (quotation omitted).

-12-