No. 17,228.

TAYLOR ET AL. *v.* MELTON ET AL.

(274 P. [2d] 977)

Decided October 4, 1954. Rehearing denied November 1, 1954.

Messrs. MOYNIHAN, HUGHES & BJELLAND, for plaintiffs in error.

Messrs. ADAMS, HECKMAN & TAYLOR, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will hereinafter refer to the parties as they appeared in the trial court, where plaintiffs in error were defendants and defendants in error were plaintiffs.

Plaintiffs in their complaint alleged, in substance, that one Fairley, who was the owner of a parcel of land, platted and subdivided the same, and a map thereof was filed February 4, 1941, with the county clerk and recorder of Mesa county; that on the map said tract of land was divided into numerous lots and streets; that Fairley sold a portion of the tract to Howard J. Nesbitt and

Mildred A. Nesbitt, the deed to which was dated March 20, 1941, and thereafter recorded; and that said deed contained the following restrictions: "That grantees agree that neither they nor their successors and assigns will construct a residence on the above-described land at a cost of less than $2500.00, and that they will not during a period of 20 years from the date hereof keep or permit to be kept on said land any horses, cattle, sheep or goats or pigs. The grantor agrees that he will not build nor permit to be built upon any of the land now standing in his name in the NW¼ NE¼ NW¼ of Sec. 26 Twp 1 S R1W Ute Meridian any structure other than a residence of a construction value of not less than $2500.00 and the incidental outbuildings after said residence of not less than $2500.00 has been built, provided, however, that this restriction does not apply to that portion of the NW¼ NE¼ NW¼ of said Section 26 described as the W½ SW¼ NE¼ NW¼ of said Sec. 26. The above restriction is a covenant running with the land, and is binding upon the grantor herein, his successors and assigns forever."

It further was alleged in the complaint that plaintiffs are owners of certain lots in said Fairley Addition and that defendants are the owners of Block 3 thereof; that plaintiffs and defendants, respectively, acquired their titles to said lots or parcels of land with notice and knowledge of the restrictions set forth in the deed to Howard J. Nesbitt and Mildred A. Nesbitt; that notwithstanding such restrictions, defendants in February, 1952, "planned and commenced, and unless restrained by the order of this court, intend to and will complete a structure to be utilized as a used car lot for the purchase and sale of used automobiles, in violation of said restrictions."

Defendants denied that they had knowledge of any restrictions, and alleged that the deed conveying Block 3 to them contained none; admitted that they were engaged in the used car business on said Block 3; denied

that such use of the premises was prohibited; and alleged that any restrictions claimed by plaintiffs were not binding on them.

The findings and judgment of the trial court contained, inter alia, the following:

"That plaintiffs Murphy, Prinster and Snyder bought lots and improved the same by building houses thereon subsequent to the deed to Nesbitt, and with knowledge of the restrictions contained therein, while some of the deeds did not specifically mention the restrictions, others did.

"The Court further finds that defendants Taylor purchased said Block 3 with knowledge that there were certain restrictions which covered the larger portion of the ten-acre tract, of which Block 3 was a portion as evidenced by the statement of Delford Taylor on the witness stand that when he was contemplating purchasing, a discussion of restrictions with Fairley was had, that Fairley had told him he had been putting restrictions on deeds, but would not do so in this particular case if defendant wished to buy, that in addition to the above personal notice, he had constructive notice of said restrictions in accordance with the Recording Acts of the State of Colorado, that defendants were furnished an abstract of title to said Block 3 which contained a copy of the map and plat, a copy of the original Nesbitt deed which contained the original restrictions.

"The Court further finds that there was no general intent to abandon the original scheme or restrictions shown by the evidence, that while there were signs placed on the premises, that on the whole the original plan with the restrictions was carried out.

\* \* \*

"In the judgment of the Court, the restrictions contained in the Nesbitt deed were binding upon all of the property then owned by said Fairley with the exception of those parts of the general tract which were specifically excepted, and that the plain meaning of the restric-

tions was that no structures of any kind other than a dwelling to cost at least $2500.00 and the necessary outbuildings could be constructed thereon, that the word "Dwelling" was meant to be construed in its ordinary sense as a house occupied as a residence, and that such a restriction would be violated in the building of a filling station and the use of the premises for the sale of used and second-hand cars.

"That the restrictions contained in said deed were binding upon all subsequent purchasers in whosesoever hands it may be, provided the parties, both grantee and grantor, understood the nature and burden of the restriction and had notice thereof either actual or constructive, and in this particular case, defendants had such actual and constructive notice.

"That in this particular case there was a general scheme for building for development of the intended tract, or development was intended by the original grantor, and that subsequent grantees are proper parties and are entitled to bring an action against each other to enforce the restrictive covenants, that the general plan has been maintained from its inception and acted upon by plaintiffs herein, and relied upon by them, hence is enforceable on all; that the said restriction was specifically a restrictive covenant running with the land and binding upon the grantor Fairley, his successors and assigns.

"The Court further found from the evidence as produced from the witness stand and from personal inspection of the premises, particularly Block 3, a building thereon, a one-room small building used as an office, and a number of cars parked on said lot, and the same was being used as a used and new automobile sales lot, that in addition to the above, defendants had built a cinderblock building with a composition roof, a building of proper size for a home, but that the same was not yet completed, there being no floors or partitions built in the building.

"Wherefore, it is Ordered, Adjudged and Decreed by the Court that the prayer of plaintiffs restraining defendants from the use of said premises as a used car lot or as a filling station for the purpose of selling oils, gasses, greases and the like, and that the small one-room building used as an office, be removed therefrom, is hereby granted; that the building which was intended to be used as an office building for the used car lot or as a filling station, if it is the wish of defendants, be completed as a residence, the residence itself to cost at least $2500.00 without addition thereto the expense of leveling and grading the land. That defendants be given 30 days in which to remove the small one-room building, and the cars; that the main cinder block building be finished as a residence within a reasonable time, and not later than one year from date."

As grounds for reversal counsel for defendants contend that the only covenant, made by a grantee in any deed containing restrictions, was not to build a residence costing less than $2500.00 and that this promise does not prevent a business use of the property. They further contend that when the grantor (Fairley) provided in the deed to the Nesbitts that he would not build nor permit to be built upon the land retained by him "any structure other than a residence," subsequent grantees who acquired property without restrictions contained in their deed of conveyance were not bound by Fairley's promise. It further is contended that the deed from Fairley to the Nesbitts did not create a restriction against a business use enforceable by these plaintiffs who held lots under deeds from Fairley which contained no specific restrictions.

## Questions to be Determined.

First: *Construing the evidence in the light most favorable to plaintiffs, does the record justify the conclusion of the trial court that the common grantor, Fairley, imposed the restriction in question in pursuance of a*

*general plan for the development and improvement of all lots included within his plat?*

This question is answered in the affirmative. Of the property included by Fairley in his plat of Fairley's Addition, filed February 4, 1941, two lots were conveyed by him by deed which included the identical restrictions set forth in the deed to the Nesbitts, and twenty-seven lots were conveyed by him without mention of any restrictions. The Nesbitt property and a tract conveyed to one Nash, were not included in the plat of Fairley's Addition because they were sold prior to the filing thereof.

 It is argued by counsel for defendants that the percentage of lots sold without restrictions in the several deeds is so large that it has the effect of destroying any general plan which Fairley might originally have intended for the development and improvement of the property. In the case of *Hayes v. Gibbs,* 110 Utah 54, 169 P. (2d) 781, we find the following statement upon which defendants rely: "Just what percentage of the lots of a tract can be conveyed without restrictions in the deed without destroying a general building plan is not settled." In the instant case counsel for defendants argue that certainly a greater percentage of deeds with restrictions, than is present in the case at bar, is necessary in order to warrant the finding that a general building plan had been established; however, the opinion in *Hayes v. Gibbs, supra,* also contains the following pertinent statement: "The intent of the original grantor is the determining factor. The fact that some of the deeds do not contain restrictive covenants may be evidence of an intent not to establish a building scheme but this evidence is not conclusive. The uniformity of the restrictions, reliance by the buyers, actual development of the tract and erection of dwelling houses free from business buildings are all considered in determining the existence of the plan." Suffice it to say that there was competent evidence, notwithstanding the small percentage of deeds

containing restrictions, to warrant the finding of the trial court that a general building plan had been agreed upon. Where there is sufficient evidence to sustain a finding of fact made by a trial court, it will not be disturbed on review.

As bearing upon the elements to be considered in determining whether the restrictive covenants involved in this case can be enforced between purchasers, we quote from Thompson on Real Property (permanent edition) volume 7, page 92, section 3607, as follows: "The restrictive covenants which equity enforces between purchasers inter sese are those that have been imposed by a common vendor or the original owners of a tract of land, in pursuance of a general plan for the development and improvement of the property by laying it out in streets, avenues, and lots, adopting some uniform or settled building scheme. The restrictions generally relate to number, location, size, or style of buildings to be erected, or the uses to which such buildings or the land may be put. In case of a breach of such covenant, 'the action is held not to be maintainable between purchasers not parties to the original covenant, in cases in which: (1) it does not appear that the covenant was entered into to carry out some general scheme or plan for the improvement or development of the property which the act of defendant disregards in some particular; (2) it does not appear that the covenant was entered into for the benefit of the land of which complainant has become the owner; (3) it appears that the covenant was not entered into for the benefit of subsequent purchasers, but only for the benefit of the original convenantee and his next-of-kin; (4) it appears that the covenant has not entered into the consideration of the complainant's purchase; (5) it appears that the original plan has been abandoned without dissent, or the character of the neighborhood has so changed as to defeat the purpose of the covenant, and to thus render its enforcement unreasonable.'" Within the meaning of the tests hereinabove

mentioned the covenants are enforceable by purchasers between themselves.

■ Second: *Are defendants, who purchased lots from Fairley subsequent to the latter's deed to the Nesbitts, bound by the covenant in that deed under which Fairley agreed that he would not "build or permit to be built" upon the lots now owned by defendants, "any structure other than a residence of a construction value of not less than $2500.00"?*

This question is answered in the affirmative. The deed to the Nesbitts which contained the covenant of Fairley, the common grantor of all the parties, appeared in the abstract of title to the lots acquired by defendants. The trial court found that, in addition to the constructive notice arising from the recorded instrument, defendants had actual notice of the existence of the restriction. There was ample evidence to support this finding.

It is argued by counsel for defendants that there was no "corresponding benefit" to the land sold to Nesbitts and that retained by Fairley, in that a business use was not prohibited on the property purchased whereas it was forbidden on the area retained by Fairley, and that the restrictive covenants are unenforceable for lack of mutuality.

■ It further is contended on behalf of defendants that there is no privity of estate between plaintiffs and defendants, and that the Nesbitts are the only persons who can complain concerning the failure of Fairley to impose restrictions by deed upon the lots acquired by defendants. We find no merit in this contention. With reference to the point that only Nesbitts can assert a claim, we direct attention to the principle of law stated in volume 3, Tiffany Real Property (3rd ed.), page 449, as follows: "Accordingly, except perhaps in a few states, the requisite privity exists in the case of a covenant by a grantor to do or not to do something on land retained by him, adjoining that conveyed, so that one to whom

the former is subsequently conveyed by him may be bound by the covenant; * * *."

From Thompson on Real Property (permanent edition), volume 7, page 105, section 3616, we quote the following statement of the applicable rule: "A subsequent grantee is required to take notice of a building restriction contained in the original deed, even though such restriction does not appear in the subsequent deeds. Where the deed to the first lot sold provides for a building restriction on the grantor's other lots in the same subdivision, the purchasers of such other lots will take title subject to such restrictions." See, also *Recco v. Chesapeake & Ohio Railway Co.*, 127 W. Va. 321, 32 S.E. (2d) 449; *Hayes v. Gibbs, supra.*

The argument of defendants' counsel on other points, namely: That the trial court committed error in basing its findings in part upon a personal inspection of the premises; and that plaintiffs had waived any right to enforce the restriction if any existed, has been considered and found to be without substantial merit.

The judgment is affirmed.

MR. JUSTICE HOLLAND dissents.

MR. CHIEF JUSTICE STONE and MR. JUSTICE CLARK not participating.