In re Eve Lynn T. (I.O.) LINCOLN, Debtor.

Eve Lynn T. (I.O.) LINCOLN, Plaintiff,

v.

CHERRY CREEK HOMEOWNERS ASSOCIATION, Central Bank for Cooperatives, American Credit Company, Defendants.

Bankruptcy No. 83 B 00190 G.
Adv. No. 83 G 0109.

United States Bankruptcy Court,
D. Colorado.

June 15, 1983.

Edward I. Cohen, Denver, Colo., for plaintiff.

Atler, Zall & Haligman by David J. Rubin, Denver, Colo., for defendants.

JAY L. GUECK, Bankruptcy Judge.

## BACKGROUND

THIS MATTER comes before the Court on an objection to dischargeability, objections to confirmation and a Complaint to Avoid Liens in a Chapter 13 proceeding. The objection to dischargeability was filed by Central Bank for Cooperatives. Two objections to confirmation have been filed, one by Cherry Creek Homeowners Association and a second objection by Central Bank for Cooperatives. The Complaint to Avoid Liens filed by the debtor seeks to void liens of the Cherry Creek Homeowners Association (hereinafter referred to as "Cherry Creek"), the Central Bank for Cooperatives (hereinafter referred to as "Central"), and the American Credit Company (hereinafter referred to as "American Credit").

The debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 17, 1983. On that same date, the debtor also filed the Complaint to Avoid Liens. Subsequent to filing of the Plan, the aforementioned objections to confirmation and objection to dischargeability were filed.

The Plan proposes to pay holders of mortgage liens on the debtor's residence in full outside the plan. Unsecured creditors, who would receive zero in a Chapter 7 liquidation, are to receive $1.00 per claim. The Complaint to Avoid Liens is filed pursuant to Sec. 522(f)(1) of the Code. Consequently, the plan treats the three creditors as unsecured. The basis for the lien voidance action is that those creditors allegedly hold judicial liens which impair an exemption to which the debtor is entitled.

The objection to confirmation filed by Cherry Creek and Central rest on different grounds. Cherry Creek asserts it holds a contractual lien in the debtor's real property, and as a secured creditor, § 1325(a)(5) mandates payment in full for past-due annual and special assessments. Central asserts that this plan is not filed in good faith as is required by § 1325(a)(3) because the debtor seeks to discharge a debt under Chapter 13 that would not be dischargeable in a Chapter 7 case. The debt in question is a judgment allegedly based on a claim of embezzlement. Central also filed an objection to the discharge of Lincoln with respect to this debt.

## ISSUES

1. May the debtor avoid the liens of Cherry Creek, Central and American Credit pursuant to § 522(f)(1)?

2. Has the plan been filed in good faith as required by § 1325(a)(3)?

3. May the debtor be discharged from the debt owed to Central?

## DISCUSSION

1. *Lien Voidance.* § 522(f) of the Bankruptcy Code states as follows:

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under sub-section (b) of this section, if such lien is—
(1) a judicial lien; ..."

The question here is whether the judicial liens of Cherry Creek, Central and American Credit are judicial liens which impair an exemption of the debtor. § 522(b)(1) provides that a debtor may ex-

empt from property of the estate certain property specified in the Code unless applicable state law specifies to the contrary. The State of Colorado has substituted its own exemptions pursuant to this section in place of the federal exemptions. The Colorado exemption provisions are contained in C.R.S.1973 13–54–107. Thus, the liens are voidable if they impair an exemption to which the debtor would have been entitled under Colorado law.

■■■ Colorado provides that the judicial lien attaches to nonexempt real property of the debtor when a transcript of the judgment docket is filed with the County Recorder where the real property lies. C.R.S. 1973, § 13–52–102 (1982 Cum.Supp.). The Colorado exemption statute applicable to real property is contained in C.R.S.1973, § 38–41–201, which reads as follows:

> "*Homestead Exemption.* Every homestead in the State of Colorado occupied as a home by the owner thereof or his family shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding in value the sum of $20,000.00 in actual cash value in excess of any liens or encumbrances on the homesteaded property in existence at the time of any levy of execution thereon."

By operation of this statute, the homeowner may exempt from levy, execution and attachment up to $20,000.00 in actual cash value in excess of liens in existence on the homesteaded property at the time of any such levy and execution. In determining which liens will be used to calculate the exemption we use only those liens or encumbrances which existed prior to the placement of the homestead right on the property. *Patterson v. Serafini,* 187 Colo. 209, 532 P.2d 965 (1974); *Sterling National Bank v. Francis,* 78 Colo. 204, 240 P. 945 (1925); *Weare v. Johnson,* 20 Colo. 363, 38 P. 374 (1894), and liens with respect to which the debtor has expressly waived the homestead exemption. *Landmeier v. Hanna,* 157 Colo. 82, 401 P.2d 86 (1945). The homestead exemption is established automatically in Colorado from the date of the

debtor's occupancy except with respect to liens which arose prior to July 1, 1975. C.R. S.1973 § 38–41–202. Since there are no debts here which arose prior to July 1, 1975, the homestead exemption was created automatically when Lincoln took possession of the real property.

The fair market value of the real property was established to be approximately $118,000 to $119,000 as a result of uncontroverted testimony of a real estate expert who had several years experience in the area. The net fair market value, after deduction for commission and other costs was in excess of $110,000. The debt structure on the real property consists of a first mortgage lien in favor of Peoples Mortgage Company in the amount of $60,277.00, a second mortgage held by City Consumer Mortgage Company in the amount of $31,-280.00, and a third mortgage held by Charlene Smith in the approximate amount of $8,000.00. Although the liens of City Consumer Mortgage and Smith came into existence subsequent to the automatic establishment of Lincoln's homestead right, they are not supplanted because Lincoln executed express waivers in both deeds of trust. Therefore, Lincoln's equity in the property to which the homestead exemption attaches is approximately $10,000.00.

■■■ The judicial liens of Cherry Creek, American Credit and Central which attached in 1981 or 1982 impair the debtor's equity because they were created subsequent to the establishment of the homestead right and no waiver was obtained from Lincoln. Consequently, pursuant to 11 U.S.C. § 522(f)(1), § 522(b)(1), C.R.S. 1973, § 13–54–107, § 38–41–201, and § 38–41–202, these liens are null and void as judicial liens.

■■■ However, Cherry Creek asserts it holds a contractual lien created by a declaration it recorded on October 7, 1976, in Book 2504, at page 393 and amended by instrument recorded on May 19, 1977, in Book 2590, at page 21 in the Office of the Clerk and Recorder of Arapahoe County, Colorado. The argument is that a prior

recorded lien was in existence when Lincoln accepted the deed to the property, which she received on November 30, 1977. Therefore, under the homestead statute this lien would be used to calculate the debtor's equity. At the time Lincoln accepted the deed, she had actual and/or constructive notice of its contents. This prior lien had already been created and related back to the date of filing the declaration. See *Boyle v. Lake Forest Property Owners Association,* 538 F.Supp. 769 (D.C.Ala.1982); *Bessemer v. Gersten,* 381 So.2d 1344 (Fla. 1980). Therefore, Cherry Creek argues it has a secured claim and that, pursuant to 11 U.S.C. § 1325(a)(5), this claim must be paid in full at a capitalized rate.

I find no authority in Colorado or elsewhere contrary to *Boyle v. Lake Forest Property Owners Association, supra,* and *Bessemer v. Gersten, supra.* Thus, I accept the proposition of those decisions. It is clear that the encumbrance requiring payment of annual and special assessments is an affirmative covenant which touches and concerns the land. *Boyle, supra,* and *Gersten, supra.* (For requirements of covenants at law in Colorado, see *Taylor v. Melton,* 130 Colo. 280, 274 P.2d 977 (1954)). It appears equitable to hold that a property owner is bound to a lien which is stated specifically in the deed. The existence of the lien here was established by a prior recording of which Lincoln had constructive notice. She also had actual notice from the contents of the deed, itself. Thus, Cherry Creek holds a secured claim and the debtor is ordered to amend the plan to provide for appropriate treatment of the sum of $732.70 owed in unpaid assessments.

**■** *2. Good Faith.* Central urges this Court to deny confirmation of Lincoln's plan on the basis that it has been proposed in bad faith. The objection of Cherry Creek is moot based on the foregoing discussion. Central argues that the debtor could not discharge the debt owed to Central in a Chapter 7 liquidation. Thus, argues Central, the proposal of a plan which provides for a $1.00 payment to Central in Chapter 13 is not in good faith. The debt owed to Central is dischargeable in Chapter 13. 11 U.S.C. § 1328(a). The fact that a debt may be dischargeable in Chapter 13 but not in Chapter 7 is not, in itself, an indication of bad faith when a debtor chooses to avail himself of Chapter 13 protections. It may simply be good sense.

**■** The burden of proof to obtain confirmation is on the proponent of the plan. *In re Wolff,* 22 B.R. 510 (Bkrtcy.App.Cal. 1982). There has been a split of authority in the courts concerning interpretation of the term "good faith" as used in 11 U.S.C. § 1325(a)(3). The latest expression in this circuit is expressed in *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983). This decision is dispositive of the issue in this case.

**■** The Tenth Circuit Court of Appeals has elected to adopt the analysis of the Eighth Circuit as set forth in *U.S. v. Estus (In re Estus)* 695 F.2d 311 (8th Cir.1982). That analysis takes the position that "good faith" is not determined by the amount of the payment proposed. It rejects the "meaningful payment" criteria of *In re Iacovoni,* 2 B.R. 256 (Bkrtcy. Utah 1980). It also rejects the "best interests of creditors" test previously discussed in this district in *In re Cloutier,* 3 B.R. 584 (Bkrtcy. Colo. 1980). Thus, a nominal payment plan is not to be automatically rejected, but neither is a plan to be automatically confirmed under § 1325(a)(3) simply because it meets the "best interests" test of § 1325(a)(4).

Rather, it is now clear under *Flygare, supra,* that the proper inquiry in every case is whether the plan proposed constitutes an abuse of the provisions, purpose or spirit of Chapter 13. If it does not constitute such an abuse, the plan may be confirmed so far as "good faith" is concerned. *In re Flygare, supra; In re Estus, supra.*

**■** This inquiry must be made on a case-by-case basis, with the bankruptcy judge responsible to exercise its fact finding function in accordance with the circumstances of each case. *In re Flygare, supra.*

Certain factors set forth for inquiry in *Estus* have been adopted as relevant to a determination of good faith by the court in

*Flygare, supra.* I do not choose to reiterate these criteria here, lest they be deemed to be exclusive. The Tenth Circuit Court of Appeals has said the "list is not exhaustive, and the weight given each factor will necessarily vary with the facts and circumstances of each case." *In re Flygare, supra,* 709 F.2d at page 1348.

Suffice it to say that each of these factors, as well as other considerations, have been evaluated in arriving at a good faith determination in this instance. After reviewing all of these matters, sufficient concerns remain that it is necessary to examine the burden of proof.

■ § 1325(a) provides that the court shall confirm a plan if six criteria are met. The debtor, as the proponent of a Chapter 13 plan, has the burden of establishing these criteria for confirmation. *In re Wolff,* 22 B.R. 510 (9th Cir.Bkrtcy.App. 1982); *In re Elkind,* 11 B.R. 473 (Bkrtcy. Colo.1981).

■ In my judgment the debtor has not met this burden of proof to establish that the plan has been proposed in good faith as required by § 1325(a)(3).

The debtor here has been employed in a responsible position with Petro Lewis for over two years. While this is considered to her credit, it is also noted that she is capable of demonstrating better effort with respect to her unsecured creditors. This, in and of itself, does not indicate a lack of good faith. This is especially so when such creditors would likely receive no dividend in a Chapter 7 liquidation. However, the debtor's income reflects a net take-home pay of approximately $2,331.00 per month and expenses of $2,231.00 per month. These expenses include her payments on three deeds of trust on her home as well as expenses of two dependents, her sons ages 20 and 21 years. No evidence was presented to indicate why or how these two sons are totally dependent upon this debtor, but that is of little consideration in this matter. What is of concern is the fact that there are unsecured debts of $30,623, including the Central Bank for Cooperatives indebtedness

of $9,815.48. The evidence indicates this indebtedness was based upon fraud (embezzlement) and would not be subject to discharge in a Chapter 7 liquidation. The debtor then proposes to pay to the Trustee the sum of $100.00 per month for a period of only four months. The normal period encompassed within a debtor's plan is three years. Additionally, the four month period fails to give any consideration to any probable increases in income and the debtor's ability to defray these unsecured debts within the next three years.

While the spirit and purpose of Chapter 13 of the new Code is to afford greater latitude and assistance to debtors than was present under the old Act, I can find nothing in the Legislative History or case authority which would support the ease of discharge sought here, especially where almost $10,000 of the unsecured indebtedness appears to be nondischargeable in a liquidation, as being founded on fraud.

It is not to be intimated that the debtor has the burden of establishing each of the relevant good faith factors set forth in *Flygare* and *Estus.* However, it is the burden of the debtor to establish that, on balance, the relevant factors in each case establish the total element of "good faith". When the court, after weighing all the facts and circumstances, concludes that the plan demonstrates an "abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied." *In re Flygare, supra,* 709 F.2d at page 1347; *In re Estus, supra,* 695 F.2d at page 316. I conclude in this instance, after weighing all the facts and circumstances, that the plan as presently presented does constitute an abuse of the spirit, as well as the provisions and purpose of Chapter 13.

Accordingly, the Chapter 13 plan as presently proposed cannot be confirmed.

### OBJECTION TO DISCHARGE

■ Central Bank of Cooperatives filed an objection to dischargeability on February 4, 1983, alleging that the debt owed by Lincoln to Central is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). On May 3,

1983, the parties stipulated that they desired to waive trial on this complaint and submit the case, based on evidence adduced at this hearing, held on March 23, 1983.

Discharges in Chapter 13 matters are governed by § 1328 of the Code. Only two kinds of debts are excepted from discharge under § 1328(a). These are debts provided for under § 1322(b)(5) and those specified in § 523(a)(5). Debts contemplated under § 1322(b)(5) are those debts upon which payments will be made after the date on which the final payment under the plan is due. No such indebtedness is involved in this action. Debts covered under § 523(a)(5) are alimony and support obligations. No such indebtedness is present in this action. Debts founded on fraud or embezzlement are covered under 11 U.S.C. § 523(a)(4). These are not enumerated as being among those debts set forth in § 1328(a) as a ground for denial of discharge in a Chapter 13 proceeding. Thus, at such time as a confirmable plan is presented under Chapter 13, the discharge of this indebtedness would be allowed.

### JUDGMENT

Based upon the foregoing discussion and authority, it is hereby ORDERED as follows:

1. That the judicial liens of Cherry Creek Homeowners Association, Central Bank of Cooperatives and American Credit Company are voided pursuant to 11 U.S.C. § 522(f)(1);

2. That the plan should be amended to treat Cherry Creek Homeowners Association as a secured creditor consonant with 11 U.S.C. § 1325(a)(5);

3. That the objection of Central Bank of Cooperatives to confirmation of the plan as presently constituted is granted on the basis that the plan constitutes an abuse of the provisions, purpose and spirit of Chapter 13 of the Code;

4. That ruling on the objection to discharge will be reserved until the contents of any amended plan has been reviewed to determine if it satisfies the requirements of Chapter 13 of the Code;

5. That the debtor shall submit an amended Chapter 13 plan within ten (10) days, or to move to dismiss or convert within that time.