Frances E. ALLEN and Paula M. Allen, Plaintiffs–Appellees,

v.

Eleanor A. NICKERSON, Defendant–Appellant.

No. 05CA1659.

Colorado Court of Appeals, Div. II.

Dec. 28, 2006.

596

Charles C. Powers, South Fork, Colorado, for Plaintiffs–Appellees.

Gallegos Law Office, A. Frank Gallegos, Alamosa, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Eleanor A. Nickerson, appeals from a summary judgment in favor of plaintiffs, Frances E. and Paula M. Allen, finding the Allens owned an access easement across Nickerson's property. We affirm.

In 1983, Nickerson and her now-deceased husband hired an engineering firm to survey property they owned and to subdivide the property in preparation for potential sale. The firm created a map subdividing their property into five parcels, including one large parcel and four smaller parcels. Although the Nickersons did not seek final approval of the subdivision from the county, they recorded restrictive covenants with the clerk and recorder's office of Rio Grande County on the smaller parcels. In addition, they recorded a conveyance of an access easement to each of the smaller parcels to allow access to a county road over the larger parcel. The conveyance of roadway easement provided in pertinent part as follows:

> This easement and right-of-way shall run with the land and shall be appurtenant to the real property described on "Exhibit B", such that a transfer of legal title to all or any portion of said land shall automatically transfer an interest in the easement and right-of-way hereby granted. Grantors warrant the title against all persons claiming under grantors.

> Grantors for themselves and their successors and assigns covenant and agree as follows: (a) that the owner or owners of the real property described in "Exhibit A" shall permit the owner or owners of the real property described on "Exhibit B", their heirs, personal representatives, suc-

cessors and assigns to construct and maintain a roadway upon the real property described in "Exhibit A"; (b) the owner or owners of the real property described in "Exhibit A" shall not construct any gates or other obstruction across any portion of the real property described in "Exhibit A"; or otherwise interfere with or obstruct the easement [sic] or right-of-way hereby granted, except that the owner or owners of the real property described on "Exhibit A" may construct and install such cattle guards or other nonobstructive devices as may be required to contain and protect livestock.

In 1990, Nickerson's son and daughter-in-law (collectively Nickerson's relatives) acquired one of the smaller parcels of land described in Exhibit B by warranty deed with an attachment describing the access easement. In 1996, the Allens purchased a smaller parcel also described in Exhibit B, that was adjacent to the property of Nickerson's relatives. However, unlike the deed conveying property to Nickerson's relatives, the Allens' warranty deed did not mention either the restrictive covenants or the access easement.

After the parties filed cross-motions for summary judgment, the trial court held that the Nickersons had created a conditional or future easement when they recorded the access easement with the county. Therefore, it held the Allens possessed an access easement over Nickerson's property and granted the Allens' motion for summary judgment. In a subsequent bench trial, the trial court awarded the Allens damages of $1,373.14 and costs but denied their request for attorney fees.

## I.   Standard of Review

We review the trial court's summary judgment de novo. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814 (Colo. 2004). Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

Here, there are no material facts in dispute. Thus, we consider whether the trial court properly determined that the Allens were entitled to summary judgment as a matter of law.

## II.   Conveyance of Roadway Easement

Nickerson argues the trial court erred in finding she and her late husband created a conditional easement when they recorded the conveyance of the access easement because Colorado law does not permit a property owner to create an easement on his or her own property. We disagree.

An easement is a right conferred by grant, prescription, or necessity authorizing one to do or maintain something on the land of another. *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229 (Colo.1998). Therefore, by definition, one cannot possess an easement in one's own property. *See Scott v. Powers,* 140 Colo. 14, 342 P.2d 664 (1959); *see also Hidalgo County Water Control & Improvement Dist. No. 16 v. Hippchen,* 233 F.2d 712, 714 (5th Cir.1956) ("it is elementary that the dominant and servient estates must be held by different owners, for no person can have an easement in his own property" (quoting 15B Texas Jur. *Easements* 254) ).

However, an exception to this general rule applies where a developer creates a subdivision and records servitudes intended to run with the land and benefit the subdivided parcels. The Restatement (Third) of Property provides, "A servitude is created ... if the owner of the property to be burdened ... conveys a lot or unit in a general-plan development or common-interest community subject to a recorded declaration of servitudes for the development or community. . . ." 1 Restatement (Third) of Prop.: Servitudes § 2.1(1)(b) (2000). It also notes:

Recording a declaration or plat setting out servitudes does not, by itself, create servitudes. So long as all the property covered by the declaration is in a single ownership, no servitude can arise. Only when the developer conveys a parcel subject to the

declaration do the servitudes become effective.

1 Restatement, *supra*, § 2.1 cmt. c.

■ Further, conditions subsequent in deeds will be given effect when they are clearly created. *Jelen & Son, Inc. v. Kaiser Steel Corp.,* 807 P.2d 1241 (Colo.App.1991).

Colorado appellate courts have not addressed whether a subdivision developer may create valid servitudes that are conditional upon the conveyance of individual plots. However, the supreme court has held that if a subdivision is created with a common plan, servitudes are binding on a lot purchaser with notice of the restrictions. *Pagel v. Gisi,* 132 Colo. 181, 286 P.2d 636 (1955); *Taylor v. Melton,* 130 Colo. 280, 274 P.2d 977 (1954); *Seeger v. Puckett,* 115 Colo. 185, 171 P.2d 415 (1946).

In *Seeger,* the property owner platted his property for residential purposes. Although he did not record any restrictive covenants, he included a restrictive covenant in the deeds conveying each lot. One of the lots was later conveyed twice without mention of the restrictive covenant, and the new lot owner attempted to modify his home in contravention of the restrictive covenant. The supreme court held that although there was no contract between the lot owner and his neighbors, the restrictions were enforceable in equity so long as there was an original subdivision plan and the purchaser had knowledge of the restrictions.

In *Taylor,* a property owner subdivided certain property and recorded restrictive covenants burdening each lot with a provision that it be used for residential purposes. The owner conveyed a majority of the lots without mention of any restrictive covenants. The defendant, a lot owner whose deed did not mention the covenants, attempted to use his lot for a used car business, and several other lot owners sued to enforce the restrictions.

After a bench trial, the trial court found the defendant had constructive notice of the restrictions because his deed contained a plat and map that included the original restrictions. It also found the grantor did not intend to abandon the restrictive covenants because "the general plan has been maintained from its inception." *Taylor v. Melton, supra,* 130 Colo. at 284, 274 P.2d at 980. It held the restrictions were binding on all purchasers of the lots, "provided the parties, both grantee and grantor, understood the nature and burden of the restriction and had notice thereof either actual or constructive." *Taylor v. Melton, supra,* 130 Colo. at 284, 274 P.2d at 980. Therefore, the trial court held the covenants applied to each of the lots in the subdivision, including that of the defendant, and ordered the defendant to remove the used cars from his lot. The supreme court affirmed the trial court, holding there was a general building plan notwithstanding the large number of deeds that did not include the covenants.

Finally, in *Pagel,* several lot owners sued the defendant to prevent him from parking his trailer home on a lot restricted to residential use. Although a number of the deeds conveying the lots did not contain the restriction, all the lot owners, except the defendant, conformed to the restriction. The trial court did not discuss whether the restrictions were recorded. However, it found there was a common plan of restriction and that the defendant was aware of the restriction when he purchased the property. The supreme court affirmed and held:

> As a general rule, the omission of a restrictive covenant contemplated by a general plan of development of a subdivision through inadvertence or otherwise, in a conveyance of one of the lots by the subdivider, does not prevent enforcement of the restriction against the immediate grantee of such lot, or his successor in title, if either took with notice of the restriction or knowledge of the general plan.

*Pagel v. Gisi, supra,* 132 Colo. at 184–85, 286 P.2d at 638.

■ Therefore, servitudes created by a general plan are binding upon subsequent purchasers with notice of the restrictions even if the purchaser's deed does not include the restriction.

■ Although this line of cases addresses restrictive covenants, rather than affirmative easements, the same principle applies be-

cause both are servitudes. *See* 1 Restatement, *supra*, § 1.1 (defining a servitude as a legal device that creates an obligation that runs with the land and includes easements, covenants, and profits); *see also* 9 Richard R. Powell, *Powell on Real Property* ¶ 60.01[6] (Michael Allan Wolf ed., 2005) (noting the Restatement (Third) abolished the distinction between easements and covenants); *see also Lobato v. Taylor*, 71 P.3d 938, 952 (Colo. 2002) (citing 1 Restatement, *supra*, § 1.2 cmt. e, and concluding same legal rules apply to easements and profits).

■ Therefore, we conclude that a property owner who subdivides property with a common plan may create servitudes, including easements, burdening or benefiting the subdivision that arise upon the conveyance of individual parcels, and those servitudes are binding upon the subdivider owner and inure to purchasers with notice.

Nickerson argues that *Scott v. Powers, supra*, requires a different result. We disagree.

In *Scott*, the supreme court addressed whether a party had established the requirements for a prescriptive easement by adverse possession. It ruled: "It is obvious that plaintiffs could not create an easement in their favor on their own property because any use to which they would put the property when they owned it would be as owner, and not otherwise." *Scott v. Powers, supra*, 140 Colo. at 16, 342 P.2d at 666.

■ As *Scott* holds, a party cannot establish adverse use of his or her own property. Here, however, Nickerson did not intend the roadway easement to become effective on her own property until a portion of her property was sold or otherwise transferred. Additionally, here there was an express conveyance of a roadway easement, unlike the purported easement in *Scott* arising under a theory of adverse possession.

Nickerson further argues the trial court erred in discerning her intent on summary judgment without the benefit of an evidentiary hearing. We disagree.

■ Generally, to ascertain the extent of an expressly created easement, we examine the instrument conveying that right to determine the parties' intent. *Lazy Dog Ranch v. Telluray Ranch Corp., supra; Ford v. Summertree Lane Ltd. Liab. Co.*, 56 P.3d 1206 (Colo.App.2002).

The Restatement (Third) also subscribes to the view that whether a developer creates a servitude by recording a declaration depends upon the developer's intent:

> Ordinarily the intent to convey a lot or unit subject to the declaration is expressed in the deed, but the intent may also be inferred from the circumstances. If the declaration has been recorded, a conveyance of a lot or unit to a consumer purchaser sufficiently manifests the intent to effectuate the development plan and subject all property in the development to the terms of the declaration.

1 Restatement, *supra*, § 2.1 cmt. c.

■ If a deed is ambiguous regarding the parties' intent, summary judgment is not appropriate. *Lazy Dog Ranch v. Telluray Ranch, supra*. However, an unambiguous deed is construed using the plain language of the document. *Ford v. Summertree Lane, supra*. Extrinsic evidence may not be used "to contradict the language of the written instrument; rather, extrinsic evidence is used to explain and give context to the language." *Lazy Dog Ranch v. Telluray Ranch, supra*, 965 P.2d at 1237.

Here, the trial court found that the recorded conveyance of easement evidenced the Nickersons' intent to create an easement when any of the smaller parcels was conveyed to another party. Thus, the plain meaning of the document was clear and unambiguous, and no evidentiary hearing was necessary.

Nickerson does not argue that she attempted to extinguish the easement, but relies upon her argument that no easement was ever created. Having considered the Nickersons' affirmative steps to create and record an easement benefiting the Allens' property, we agree with the trial court that the Nickersons' conveyance of easement clearly reflected their intent to create an easement when any of the smaller parcels was conveyed to another party.

■ Although the Allens' warranty deed did not mention the easement, the servitude need not be included in a deed so long as the purchaser "took with notice of the restriction or knowledge of the general plan." *Pagel v. Gisi, supra,* 132 Colo. at 185, 286 P.2d at 638.

Here, Nickerson and her late husband recorded a number of instruments, including restrictive covenants and a roadway easement, and later conveyed at least one parcel, the deed to which specifically mentioned those documents. In addition, the parties agreed that there was a road where the original subdivision map had reserved an easement. Though the Nickersons never "finalized" the development, "the general plan has been maintained from its inception." *Taylor v. Melton, supra,* 130 Colo. at 284, 274 P.2d at 980.

Further, although the record does not indicate whether the Allens had actual knowledge of the conveyance of roadway easement when they purchased their lot, they had at least constructive notice of the easement. Had they researched the chain of title of their lot, they would have found the conveyance of the access easement recorded by the Nickersons. Therefore, we conclude the Allens' property benefited from the easement.

### III. Abandonment and Merger

Nickerson argues that if an easement was created, it was extinguished by abandonment or merger. We disagree.

#### A. Abandonment

■ "To establish an abandonment of an easement, it must be shown by the party asserting the abandonment that there were affirmative acts manifesting an intention on the part of the owner of the dominant estate to abandon the easement." *Gjovig v. Spino,* 701 P.2d 1267, 1269 (Colo.App.1985).

■ The Allens owned the dominant estate. *See Lazy Dog Ranch v. Telluray Ranch, supra,* 965 P.2d at 1234 ("the property benefited by the easement is called the 'dominant estate' "). Nickerson did not introduce any evidence that the Allens took affirmative steps to abandon the easement. Nor did she demonstrate that she took affir-

mative steps to abandon the easement by not obtaining county approval for the proposed subdivision before selling the property to the Allens. Therefore, the trial court correctly found the easement was not abandoned.

#### B. Merger

Finally, Nickerson argues that if an easement was created, it was extinguished by merger. We disagree.

■ Where an easement's servient and dominant estates come into common ownership, the easement is extinguished by merger. *Salazar v. Terry,* 911 P.2d 1086 (Colo. 1996).

■ Here, the easement was created when the property was sold to the Allens. Neither party has asserted that, after the property was sold to the Allens, the dominant and servient estates came into common ownership. Therefore, we conclude the easement was not extinguished by merger.

### IV. Condition Precedent

■ Nickerson argues in the alternative that even if there is an easement, the Allens have not attempted to construct, nor have they contributed to maintain, a roadway on the easement, and therefore, they have not met a condition precedent to establish the easement. We disagree.

Nickerson relies on a provision of the conveyance of roadway easement that requires purchasers of her property to maintain the easement and right-of-way.

The record shows that, because Nickerson asserted that the conveyance of easement was a nullity, she did not permit the Allens to use the road or the roadway easement and threatened to sue them for trespass if they did. Under these circumstances, we conclude Nickerson waived the requirement that the Allens construct or maintain a roadway. *See Kaiser v. Mkt. Square Disc. Liquors, Inc.,* 992 P.2d 636 (Colo.App.1999) (holding a party may waive a condition precedent by words or unequivocal act).

## V. Attorney Fees

 The Allens contend that they are entitled to an award of attorney fees under § 13–17–102, C.R.S.2006, on the ground that the defenses raised in the trial court and on this appeal are frivolous, groundless, or vexatious.

Because we conclude that Nickerson's appeal is not frivolous, groundless, or vexatious, we deny the Allens' request for appellate attorney fees. *See* C.A.R. 38(d). Similarly, we conclude the trial court did not abuse its discretion in declining to award the Allens attorney fees on that basis.

Accordingly, the trial court's summary judgment in favor of the Allens is affirmed.

Judge VOGT and Judge TERRY concur.