24CA2009 Starski v Holderness 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2009
Douglas County District Court No. 23CV42
Honorable Andrew C. Baum, Judge

Edward Starski,

Plaintiff-Appellant,

v.

Chandler Holderness,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE BERGER*
Lipinsky and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Edward Starski, Pro Se

The Ray Law Firm LLC, Keith P. Ray, Centennial, Colorado, for Defendant-
Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Plaintiff, Edward Starski, appeals the judgment in favor of defendant, Chandler Holderness.  Starski contends that the trial court erred in the following respects: (1) denying his motion to dismiss for failure to join indispensable parties; (2) concluding that Holderness had a valid easement on Starski's property; (3) determining that Holderness' underground "invisible" dog fence was not a structure prohibited by the declarations of covenants affecting Starski's property; and (4) failing to award Starski nominal damages for Holderness' trespass by installing a chicken coop on Starski's property.  We consider and reject each of Starski's contentions and affirm the judgment.

## I.     Relevant Facts and Procedural History

¶ 2     In 2023, Starski and his wife purchased a lot (Tract B) in the Sequoia Ridge Subdivision in Douglas County.  Shortly after the purchase, Starski brought trespass claims against Holderness, who owned property bordering Tract B.  Starski alleged, among other things, that Holderness trespassed by burying an invisible dog fence and installing a chicken coop on Tract B.

¶ 3     Holderness counterclaimed, seeking, in part, a declaratory judgment that the subdivision's declarations granted him an easement and a right to access Tract B.

¶ 4     During the second day of the resulting bench trial, Starski moved to dismiss Holderness' declaratory judgment counterclaim for failure to join indispensable parties.[1]

¶ 5     After the trial, the court issued a detailed order denying Starski's motion to dismiss. The court also issued a comprehensive written judgment making findings of fact and conclusions of law. The court concluded that Holderness had a valid easement that gave him the right to bury the invisible fence on Tract B, and that, while the installation of the chicken coop was a trespass, Starski failed to prove any damages resulting from that trespass.

## II.     Failure to Join Indispensable Parties

¶ 6     Starski argues that the trial court erred by denying his motion to dismiss Holderness' declaratory judgment counterclaim for

---

[1] Starski disputes precisely when he moved to dismiss for failure to join indispensable parties. That dispute is not material to our disposition of this appeal. Moreover, Starski did not supply us with a transcript of the trial. Absent this record, "we must presume the evidence fully supports the trial court's ruling." *Clements v. Davies*, 217 P.3d 912, 916 (Colo. App. 2009).

failure to join indispensable parties.  We conclude that the trial court did not abuse its discretion.

### A. Standard of Review and Applicable Law

¶ 7 Under C.R.C.P. 12(b)(6), a party may move to dismiss a claim because the claim's proponent failed to join an indispensable party. Usually, such objections can be raised at any stage of the proceedings.  *Karakehian v. Boyer*, 900 P.2d 1273, 1280 (Colo. App. 1994), *aff'd in part and rev'd in part on other grounds*, 915 P.2d 1295 (Colo. 1996).  However, there is an exception to that general rule.  "[A] party with knowledge of a person whose joinder may be required may not wait until late in the proceedings and then raise the issue for his own protection rather than that of the allegedly indispensable person." *Id.*

¶ 8 We review a trial court's denial of a motion to dismiss for failure to join indispensable parties for an abuse of discretion. *Hygiene Fire Prot. Dist. v. Bd. of Cnty. Comm'rs*, 205 P.3d 487, 489 (Colo. App. 2008), *aff'd,* 221 P.3d 1063 (Colo. 2009).

## B. The Trial Court Didn't Abuse Its Discretion by Denying Starski's Motion to Dismiss

¶ 9 In its order denying Starski's motion to dismiss, the trial court found that Starski waited to raise the issue of indispensable parties solely to protect himself, and not the interests of the absent parties. Starski had known of Holderness' declaratory judgment counterclaim for nearly a year before trial. More damning is that Starski called some of the parties he claimed were indispensable as trial witnesses, demonstrating his awareness of those parties and their interests. Waiting until trial had already begun to raise the motion — after Starski could see how his and Holderness' claims were faring — provides ample support for the trial court's conclusion regarding Starski's motivation.

¶ 10 On appeal, Starski only makes conclusory arguments regarding his failure to raise the motion to dismiss earlier. Without citing the record, Starski merely asserts that "the district court's finding of untimeliness lacks support" because there was no showing of undue delay. However, the record does not support this contention. *See Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 18 (declining to address arguments "presented to us in a

conclusory manner that are lacking citations to any supporting authority"), *aff'd*, 2018 CO 39.

¶ 11     Starski's only citation to case law is *City and County of Denver, By and Through Its Board of Water Commissioners v. City of Arvada*, 556 P.2d 76 (Colo. 1976). But in that case, the trial court raised the indispensable parties issue, not the plaintiff or defendant. *Id.* at 79. Accordingly, unlike here, there were no allegations that a party improperly delayed in bringing the motion to dismiss. *See id.* ("[W]e do not lay down a general rule as to when the joinder of additional parties is mandatory and when it is discretionary with the trial court.").

¶ 12     Because the record supports the trial court's conclusion that Starski raised his motion to dismiss solely to protect himself — and Starski does not provide an alternative explanation for his delay — the court did not abuse its discretion in denying Starski's motion to dismiss.

### III.   Holderness' Easement

¶ 13     Starski next argues that the trial court erred by finding that Holderness had a valid easement giving him a right to access Tract B. We disagree.

## A. Standard of Review and Applicable Law

¶ 14    An easement is a type of servitude that authorizes someone to do or maintain something on the land of another. *Allen v. Nickerson*, 155 P.3d 595, 598 (Colo. App. 2006). Servitudes are created in common-interest communities when a developer "conveys a lot . . . [in the] community subject to a recorded declaration of servitudes" for the community. *Id.* (citation omitted).

¶ 15    We review de novo a trial court's interpretation of a conveyance instrument for the existence and extent of an expressly created easement. *Gold Hill Dev. Co. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 43.

## B. Holderness Had a Valid Easement

¶ 16    Starski first claims that because a homeowners association (HOA) was never formally created under the terms of the subdivision's declarations, any servitudes created by those documents are invalid.

¶ 17    True, the HOA referenced in the declarations was never formally incorporated. But whether an HOA is formally created is not determinative of the validity of common-plan servitudes. *See generally Allen*, 155 P.3d at 600 ("[A] property owner who

subdivides property with a common plan may create servitudes, including easements, burdening or benefiting the subdivision that arise upon the conveyance of individual parcels, and those servitudes are binding upon the subdivider owner and inure to purchasers with notice.").

¶ 18    As the trial court found — and Starski does not dispute — through the declarations, the developers of the subdivision created a common-interest community and stated that all the properties within the subdivision would be sold and conveyed "subject to" various servitudes.  Because the duly recorded declarations created the easements, those servitudes became enforceable upon the developers' conveyance of the land.  *See Bolinger v. Neal*, 259 P.3d 1259, 1264 (Colo. App. 2010) ("[W]here 'a developer sells lots according to a recorded plat, the grantees acquire an easement in any areas set apart for their use.'" (citation omitted)).

¶ 19    The declarations expressly granted every lot owner in the subdivision "a nonexclusive right and easement of enjoyment in and to the Common Property."  In the final plat for the subdivision, Tract B is labeled "Open Space" and is dedicated to the owners of three other lots — including the one Holderness now owns — as

7

"perpetual open space." The declarations also stated that the easement "shall be appurtenant to and shall pass with the title to every [l]ot." Because it is undisputed that Starski had notice of the servitudes encumbering Tract B, Holderness has a valid easement as defined in the declarations.

¶ 20 Starski argues that section 38-33.3-301, C.R.S. 2025, required the incorporation of the HOA before the date the first unit in the subdivision was conveyed. But the statute explicitly states, "[T]he failure of the association to incorporate . . . will not adversely affect either the existence of the common interest community for purposes of this article or the rights of persons acting in reliance upon such existence." § 38-33.3-301.

¶ 21 Without citation to authority, Starski asserts that the words "for purposes of this article" mean that the HOA incorporation requirement was a condition precedent to the enforceability of any easements. *Id.* But this ignores the rest of the statute, which specifically excuses the failure to incorporate an HOA when it comes to "the rights of persons acting in reliance" upon the existence of the common-interest community, including the enforcement of easements created by its common plan. *Id.*; *see*

*DeJean v. Grosz*, 2015 COA 74, ¶ 30 (finding that the right to form an HOA runs with the land even after initial developer failed to do so, "especially where the declaration states that the covenants are to run with the land").

¶ 22    Similarly, Starski claims that proper HOA formation is required for the HOA to hold title and "impose" the easement, but this argument also misunderstands the law.  Title to Tract B was never transferred to the HOA, nor is the HOA the entity that enjoys the easement.  Holderness — a property owner to whom the subdivision developers granted the easement in the declarations — has the right to access Tract B for the purposes specified in the easement.

¶ 23    Starski also contends that Tract B's previous sales by treasurer's deeds extinguished prior interests in the land, including the easement.  But as the trial court said, the very statute Starski cites in support of this argument states that executing a treasurer's deed "shall not affect the existence of . . . easements[] or equitable servitudes that run with land and have both benefits and burdens, . . . as claimed or existing prior to the execution of such deed." § 39-11-136(3), C.R.S. 2025.

¶ 24    Next, Starski asserts that the treasurer's deeds and failure to form the HOA "evidence abandonment" of the easement. But despite Starski's certification in his opening brief that he provided a discussion of preservation for each issue, he doesn't discuss where this abandonment argument was preserved, as the appellate rules require. C.A.R. 28(a)(7)(A). Indeed, Starski fails to discuss issue preservation for any of his appellate arguments — though Holderness concedes that all of the other issues Starski argues on appeal were preserved. Because, even after an independent review of the record, we find no evidence of the preservation of this abandonment issue, we decline to consider it.[2] *See Rinker v. Colina-*

---

[2] Starski's abandonment argument is also troublesome for other reasons. He cites "*In re Application of Kieta*, 573 N.W.2d 787 (Neb. 1998)," to support his claim. However, so far as our independent research confirms, no such case exists. In addition, throughout his briefs, Starski cites legal propositions and provides direct quotations that don't appear in the authorities he cites. These improper citations and illusory authorities are indicative of artificial intelligence (AI) "hallucinations" that risk wasting resources of the other party and the court. *See Al-Hamim v. Star Hearthstone, LLC*, 2024 COA 128, ¶¶ 2, 31. We caution Starski that this court has previously warned self-represented litigants that court filings containing AI-generated hallucinations may result in sanctions. *Id.* at ¶ 41. We decline to impose sanctions against Starski, particularly as Holderness did not bring these problematic citations to our attention and did not request a sanctions award. *See id.* at ¶ 40.

*Lee*, 2019 COA 45, ¶ 22 (declining to consider insufficiently preserved issues).

¶ 25 Starski additionally argues that various policy and equitable concerns require us to reverse the trial court's ruling on Holderness' easement. Yet, when interpreting unambiguous statutes, we are not to make or weigh public policy considerations. *Kaiser v. Aurora Urb. Renewal Auth.*, 2024 CO 4, ¶ 37. Because the law and the facts here are clear, we uphold the trial court's conclusion that Holderness has a valid easement.

## IV. The Invisible Fence

¶ 26 Starski next contends that the trial court erred by finding that Holderness' invisible dog fence wasn't a "structure" under the declarations. We again disagree.

¶ 27 Interpretations of declarations of covenants are questions of law that we review de novo. *Vista Ridge Master Homeowners Ass'n v. Arcadia Holdings at Vista Ridge, LLC*, 2013 COA 26, ¶¶ 8, 18.

¶ 28 Holderness' easement prohibits the placement of "any structure whatsoever upon the Common Property." Examples of structures are given elsewhere in the declarations, including "a Residence, any building, a tennis court, a swimming pool, fences,

11

walls, canopies, awnings, roofs, exterior lighting facilities, athletic facility or other similar improvements or attachments."

¶ 29    The trial court found that Holderness' invisible fence consisted of an entirely underground wire that "[did] not change the use or nature of the surface land" and that "if one did not know it had been installed, one would not know it was there."  Thus, the invisible fence is fundamentally not like a traditional "fence" or any of the other structures enumerated in the declarations.

¶ 30    Looking at the rest of the prohibited uses of the common property is illustrative.  The declarations' other limitations on the easement focus on denying free access to other homeowners, something the invisible dog fence did not do.  Starski's claim that the invisible fence "restrict[ed] movement across Tract B" was made without any citation and contrary to the trial court's finding.

¶ 31    Furthermore, as the trial court concluded, the word "upon" in the declarations suggests a prohibition against the placement of a structure "on the surface" of the common property, not buried underneath it as was the invisible fence's wire.  Merriam-Webster Dictionary, https://perma.cc/R4GP-P35K.

¶ 32    The "absurd outcomes" that Starski says will follow from this interpretation are inapposite.  Unlike the invisible dog fence, complex underground installations are not entirely underground, and they would "change the use or nature of the surface land." Such subterranean constructions would also likely run afoul of other provisions of the declarations by denying free access to the land and violating other government rules.

¶ 33    Accordingly, the court did not err when it found that the installed invisible dog fence did not violate the easement.[3]

### V.    Nominal Damages

¶ 34    Starski finally contends that, after the court found that the chicken coop installation constituted a trespass, the trial court erred by failing to award him nominal damages.  But we need not determine whether the trial court erred, because "[i]n the absence of special circumstances the [failure to award nominal damages is] of

---

[3] Starski also claims that the trial court erred by relying on Holderness' subjective intent.  But the court specifically rejected this reasoning and concluded that the intent element had been met for the invisible fence trespass.  Furthermore, because Starski did not request injunctive relief or damages resulting from the limited excavation work required to install the underground fence, we express no views as to whether that act was a trespass.

no consequence . . . and courts will not reverse a judgment simply because nominal damages were not awarded." *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 481-82 (Colo. App. 2003) (alterations in original) (citation omitted).

¶ 35　　Because Starski has not identified any such special circumstances — and we are aware of none — we conclude that any error in failing to award nominal damages for trespass from the chicken coop installation was harmless. *See id.* at 482.

## VI.　Disposition

¶ 36　　The judgment is affirmed.

JUDGE LIPINSKY and JUDGE TAUBMAN concur.