25CA0912 Chateau Christian v VailPoint 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0912
Eagle County District Court No. 23CV30115
Honorable Paul R. Dunkelman, Judge

The Chateau Christian Townhouses Association, Inc., a Colorado non-profit corporation; Villa Valhalla Association, Inc., a Colorado non-profit corporation; Kaciana Associates; LeiboVail LLC; Stephen N. Six; and Johnfry LLC,

Plaintiffs-Appellees,

v.

VailPoint LLC, a Colorado limited liability company,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Porterfield & Oliver, LLC, Wendell B. Porterfield, Vail, Colorado, for Plaintiffs-Appellees

Steptoe & Johnson PLLC, Deva A. Solomon, Amber M. Moore, Denver, Colorado, for Defendant-Appellant

¶ 1      In this dispute over land use covenants, defendant, VailPoint LLC, appeals the district court's grant of a permanent injunction in favor of plaintiffs, Chateau Christian Townhouses Association, Inc.; Villa Valhalla Association, Inc.; Kaciana Associates; LeiboVail LLC; Stephen N. Six; and Johnfry LLC (collectively, the Neighbors). Specifically, VailPoint contends that the court "erred by recognizing and enforcing [the] Neighbors' purported covenant and easement rights" with respect to the fenced-in area behind VailPoint's house (the enclosure). We affirm.

## I. Background

¶ 2      Since the 1960s, Vail Village has been a covenant-protected subdivision at the base of Vail Mountain. VailPoint owns a house at 366 Hanson Ranch Road on Lot d of Vail Village, while the Neighbors own nearby condominiums or townhouses. Tract E borders the properties on Lot d to the south and west. In 2023, VailPoint developed the enclosure, which includes part of Lot d-1 and Tract E. The following aerial photograph and map show the location of the properties and lots:



Aerial Photograph of VailPoint's Property, Lot d-1, and Tract E



1962 Map Showing the Complete Extent of Lot d and Tract E

The Neighbors maintain that VailPoint's development of the enclosure in 2023 violated the protective covenants for Tract E found in (1) a warranty deed and (2) the fifth filing of the subdivision plats for Vail Village.

### A.    Warranty Deed

¶ 3      In 1963, Vail Associates Ltd., the common owner of Tract E and Lot d, conveyed a portion of Lot d to Christiana-at-Vail Inc. through a warranty deed.  This deed granted Christiana-at-Vail and "its successors and assigns forever" a "perpetual right and easement of light, air, prospect, ingress and egress upon, over and across Tract E" (Deed Easement).  The deed also included a restrictive covenant (Deed Covenant), in which Vail Associates agreed "for Itself, its successors, grantees and assigns, that Tract E shall be left vacant and undisturbed in its natural condition at all times hereafter and that no structure or Improvement of any kind or character shall be, erected or maintained on Tract E."[1]  The deed

---

[1] VailPoint refers to the entire warranty deed as "the Easement." We distinguish between the two provisions of the warranty deed, referring to the provision about "ingress and egress" as the Deed Easement and the provision about "natural condition" as the Deed Covenant.

was promptly recorded, and in the years that followed, Christiana-at-Vail built condominiums, townhouses, and a house. In the 1960s, a split-rail fence was erected behind the house, creating the enclosure that VailPoint would later develop.

### B. Fifth Filing Covenants and Amendments

¶ 4  In 1965, Vail Associates recorded protective covenants as part of the fifth filing of the subdivision plats for Vail Village (Fifth Filing Covenants).  Paragraph 2.4 of the Fifth Filing Covenants required that Tract E and five other tracts "be used as an open area or for recreational uses, including parking," and that "no permanent above-ground buildings, other than buildings used for recreational purposes, shall be constructed or maintained."

¶ 5  The Fifth Filing Covenants were subsequently amended twice, but the restrictions on Tract E remained largely unchanged.  A 1971 amendment supplemented the restrictions in Paragraph 2.4, stating that Tract E and Lot d-1

> shall be used, held and maintained in good order and condition by the Town of Vail (subject to existing or recorded easements and rights of way) for use at all times as a vacant and undisturbed open area in its natural condition or landscaped with trees, shrubs and grass and no structure, building, or

4

improvement of any kind or character, whether temporary or permanent, may be erected or maintained thereon, except as herein provided.

¶ 6      This amendment also authorized "a children's playground" and a "paved pedestrian walkway."  Later, a 1984 amendment acknowledged that "a number of structures have been built in violation of the covenants" within "the boundaries of Vail Village, Fifth Filing," and it "amend[ed] the Protective Covenants to allow the present uses on the Subject Land."  Paragraph 2.4 of the amendment maintained the same restrictions but applied them to Tract E and four other tracts instead of five tracts.

C.      VailPoint's Development of the Enclosure

¶ 7      In 2015, VailPoint purchased the house from The Vail Corporation — Vail Associates' successor-in-interest — and soon sought to acquire the enclosure separately as part of a large-scale development plan.  This plan called for demolishing the house and constructing an "ultra-luxury private lodge," with hardscaping extending onto Tract E.  Accordingly, in 2016, VailPoint entered into a purchase agreement for the enclosure, contingent upon the Vail Town Council's approval of its development plan, which included requests to modify the Fifth Filing Covenants and zoning

designation.  A public hearing was held, during which the Neighbors and other residents opposed the proposal.  Ultimately, the Town Council rejected the plan.

¶ 8     After the denial, VailPoint pursued ownership of the enclosure through a quiet title action in which VailPoint named a single defendant — The Vail Corporation.  The Vail Corporation quickly settled with VailPoint.  The resulting court order granted VailPoint fee simple ownership of the portions of Lot d-1 and Tract E within the enclosure, "subject to any and all easements, covenants, restrictions, and all other matters of record duly recorded against the Property."

¶ 9     Determined to develop the enclosure, VailPoint submitted a two-part application for Lot d with the Vail Planning and Environmental Commission.  The first part — the Exemption Plat Application — sought to consolidate VailPoint's portions of Lot d, Lot d-1, and Tract E into a single parcel called "Lot 1."  The second part — the Zone District Boundary Amendment Petition — sought to rezone the portion of Tract E within the enclosure from Agriculture and Open Space to Public Accommodation.  Public

hearings were held, and once again, the Neighbors opposed the plan. The town approved the first part, but it denied the second.

¶ 10    VailPoint then devised another plan for the enclosure and submitted it to the Vail Design Review Board for the newly designated Lot 1, labeling the project as "landscaping." The Design Review Board approved the plan and issued a building permit. Unlike the previous applications, there is no evidence that the Neighbors were given notice of VailPoint's application to the Design Review Board or the issuance of the permit.

¶ 11    In 2023, VailPoint erected a construction privacy fence and began developing the enclosure. VailPoint invested $1.2 to $1.5 million to construct (1) a heated flagstone patio; (2) an eight-by-ten-foot above-ground hot tub framed by a two-to-three-foot stone wall on three sides and a six-foot wall facing the Neighbors' townhouses; (3) an electrical equipment box clad in stone veneer; (4) a stone fireplace and chimney about ten feet high; (5) a downward-angled lighting fixture; and (6) an additional two-to-three-foot stone wall along the southern perimeter of the patio (the 2023 development). This construction occurred almost entirely on Tract E over a period of three to four months. The

following photographs show the enclosure before and after the 2023

development:



The 2023 Development's Changes to the Enclosure

### D. Lawsuit

¶ 12    When the Neighbors learned of the 2023 development, they

filed suit, claiming that VailPoint had violated both the Deed

Covenant and the Fifth Filing Covenants for Tract E and seeking an

injunction to restore the enclosure to its condition before the 2023

development.[2]  VailPoint counterclaimed, seeking a declaratory

judgment that the Deed Easement and Deed Covenant did not

---

[2] The district court found that the "Chateau Plaintiffs as owners of a portion of Lot d in Tract 1 have standing to enforce [the Deed Easement and the Deed Covenant]."  The court also found that Chateau Christian Townhouses Association, Inc.; Villa Valhalla Association, Inc.; and Johnfry LLC, as property owners "within the Vail Village, Fifth Filing," have standing to enforce the Fifth Filing Covenants.  No party challenges either finding on appeal.

restrict its current use of the enclosure, either because both Covenants were "waived acquiesced, and abandoned" by the Neighbors or because they "do not and have never burdened the [enclosure]."

¶ 13 After a three-day bench trial, the district court (1) found that the Deed Covenant and Fifth Filing Covenants remained applicable to the enclosure; (2) concluded that the 2023 development violated both Covenants; (3) determined that none of VailPoint's affirmative defenses excused this violation; (4) declined to exercise equitable discretion to exempt the 2023 development from both Covenants; (5) issued a permanent injunction requiring VailPoint to restore the enclosure to its pre-2023 condition; and (6) declared that the Neighbors had abandoned the Deed Easement with respect to the split-rail fence surrounding the enclosure.

¶ 14 VailPoint now appeals.

## II. Analysis

¶ 15 VailPoint advances three primary arguments: (1) the district court failed to exercise its equitable power to exempt VailPoint's 2023 development from the Covenants; (2) the district court "erred by granting [the] Neighbors' injunction request"; and (3) the district

9

court "erred as a matter of law by not treating abandonment as a counterclaim to terminate both the [Deed Covenant] and the [Fifth Filing] Covenants under C.R.C.P. 8(c)." We address each argument and then turn to VailPoint's remaining contentions.

## A. Standard of Review

¶ 16 The "power to fashion equitable remedies" — such as canceling a restrictive covenant or entering a permanent injunction — "lies within the discretion of the [district] court." *Beren v. Beren*, 2015 CO 29, ¶ 12. Accordingly, we will not disturb such a ruling unless the court abused its discretion. *Id.*; *see also Rome v. Mandel*, 2016 COA 192M, ¶ 60 (reviewing an order granting a permanent injunction for an abuse of discretion); *Schneider v. Drake*, 44 P.3d 256, 261 (Colo. App. 2001) (reviewing equitable relief from restrictive covenants for abuse of discretion). A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Rome*, ¶ 49.

¶ 17 We review for clear error the factual findings underlying a grant of equitable relief and defer to those findings if the record supports them. *Beren*, ¶ 12. However, we review de novo the legal

basis for relief, such as the interpretation of a covenant. *See Rome*, ¶ 60; *Dallman v. Ritter*, 225 P.3d 610, 621 (Colo. 2010); *see also Buick v. Highland Meadow Ests. at Castle Peak Ranch, Inc.*, 21 P.3d 860, 862 (Colo. 2001) ("Construction of a covenant is a question of law that requires de novo review.").

## B.    Equitable Power

¶ 18    VailPoint argues that the district court erred by failing to exercise its equitable power and "terminate the [Deed Covenant and Fifth Filing Covenants] as to the [2023 development]." VailPoint asserts that these Covenants no longer serve their original purposes, are no longer beneficial to the Neighbors, and would be unduly oppressive to VailPoint if enforced. We disagree.

### 1.    Additional Background

¶ 19    The district court determined that VailPoint's 2023 development violated both the Deed Covenant, which prohibited structures of any kind on Tract E, and the Fifth Filing Covenants, which prohibited any structure on Tract E unless built for a "recreational" use. The court specifically found that the 2023 development was not a permissible "recreational" use under the Fifth Filing Covenants.

11

¶ 20    The court declined to exercise its equitable power to excuse these violations, finding that VailPoint's development efforts were unprecedented, were inconsistent with the character of open space, and had long been a concern of the Neighbors'. The court stated:

> There have been no improvement[s] in Tract E similar to the improvements done by VailPoint . . . . There has been no individual homeowner or townhome/condominium complex who hardscaped an area and added a hot tub, stove and wall. The intent of Tract E remains open space. This is inconsistent with open space. The covenants still serve a purpose and there is a purpose and there is a benefit to them. The Court does not find that enforcing the covenants imposes an oppressive burden without substantial benefit.

¶ 21    Although the court found that the split-rail fence surrounding the pre-2023 enclosure violated at least the Deed Covenant, the court exercised its equitable discretion to permit "the fenced area as it existed prior to the [2023 development]." The court explained:

> The condition of the property that existed prior to the [2023 development] is different. It existed in that form for sixty (60) years without concern from any party. To enforce the covenants in a manner that would not permit this would be inequitable. It would not serve the purpose for which it was imposed. There would be no benefit. It would be oppressive.

12

The court therefore found that equity demanded that VailPoint "return the property to the condition prior to the [2023 development] and . . . use it in a similar fashion."

### 2. Applicable Law

¶ 22     Generally, when a covenant is clear on its face, a district court will enforce it as written. *See Schneider*, 44 P.3d at 259. However, the court retains its equitable power to permit a violation of restrictive covenants under certain circumstances. Specifically, the court may modify or cancel a covenant if

  (1)   "the restrictive covenants no longer serve the purpose for which they were imposed," *Zavislak v. Shipman*, 362 P.2d 1053, 1055 (Colo. 1961);

  (2)   the covenants "are no longer beneficial to those claiming under them," *id.*; and

  (3)   "the enforcement would impose an oppressive burden without any substantial benefit," *Schneider*, 44 P.3d at 261.

¶ 23     "When the purpose for which the restriction was imposed has come to an end, and where the use of the tract of land for whose benefit it was established has utterly changed," so that no party

could reasonably enforce it in equity or claim harm from its violation, equitable relief is warranted. *W. Alameda Heights Homeowners Ass'n v. Bd. of Cnty. Comm'rs*, 458 P.2d 253, 255 (Colo. 1969) (quoting *Zavislak*, 362 P.2d at 1055-56). Thus, even when the covenants are clear on their face, if these criteria are proved, the court "may fashion a remedy to effect justice suitable to the circumstances of the case." *Woodmoor Imp. Ass'n v. Brenner*, 919 P.2d 928, 931 (Colo. App. 1996).

### 3.  Discussion

¶ 24     The district court did not abuse its discretion by declining to exercise its equitable power to allow VailPoint's 2023 development. The court concluded that the Covenants continue to serve a purpose and provide a benefit and that enforcement does not place an oppressive burden on VailPoint without a substantial corresponding benefit to others. These findings are well supported by the record.

¶ 25     First, the Covenants continue to serve the purpose for which they were imposed. The district court found that both the Fifth Filing and Deed Covenants share a common goal: to keep Tract E vacant, natural, and undisturbed. Even with the "recreational" use

14

carve-out in the Fifth Filing Covenants, the overriding purpose of the Fifth Filing Covenants is to preserve open areas "with trees, shrubs and grass" and to prevent excessive development of Tract E. The fact that some approved structures have been erected on Tract E only heightens the need to conserve the limited open space that remains.

¶ 26    VailPoint challenges the court's conclusion, asserting that the presence of various structures has "destroy[ed]" the purposes of both Covenants. But VailPoint's reliance on nearby structures — including a hotel pool and bar, a gondola, a children's playground, and paved paths — to argue that the "purpose [of the Deed Covenant] no longer exists" is misplaced. The pool and bar are not located on Tract E and, therefore, have no bearing on the purpose of the Deed Covenant. And as the district court explained, the gondola is a permitted recreational use on the commercial side of Tract E, and the 1971 amendment expressly authorized both the playground and paths. Because these structures were not subject to the Covenants or were compliant with them, they do not undermine the purpose of either Covenant.

¶ 27    VailPoint's related argument — that the split-rail fence erected in the 1960s eliminated the purpose of both Covenants with respect to the enclosure — is similarly unpersuasive. The district court recognized the difference between a simple split-rail fence enclosing a grassy open space and the hardscaping of an area with amenities such as a hot tub, stove, chimney, and wall. The split-rail fence existed for sixty years without objection from any party, whereas VailPoint proceeded with its recent hardscaping project despite continuous opposition from the Neighbors. In any event, the court exercised its equitable discretion to permit the pre-2023 enclosure — the "grassy fenced in yard" — because it was largely consistent with the overall purpose of maintaining Tract E as undisturbed open space, either in its natural condition or landscaped with trees, shrubs, and grass.

¶ 28    Second, we agree with the district court that these Covenants continue to benefit the Neighbors. The court emphasized the value of open, natural space and acknowledged the "real" and "substantial" impact of VailPoint's decision to convert a grassy area into a heated, hardscaped patio with a hot tub, stone wall, and rock stove and chimney. This change has increased noise and light

16

pollution, deprived the Neighbors of the aesthetic benefits once provided by greenery visible from nearby townhomes and walking paths, and undermined the protections that the Covenants afford to the remaining open, natural space on Tract E.

¶ 29    Third, we agree with the district court that enforcement of the Covenants is not oppressive to VailPoint, given the corresponding benefits to the Neighbors.  Although VailPoint maintains that it will be costly to restore the enclosure because it spent $1.2 to $1.5 million to build it, VailPoint moved forward with the construction despite clear knowledge of the risks.  As the district court observed, VailPoint — with the benefit of legal counsel — persistently sought to develop the enclosure for nearly a decade, despite full knowledge of the restrictions.

¶ 30    The court further found that "VailPoint tried to limit public knowledge of the project and fast track [it] to completion before objections could be made," that it "decided to move forward with the [2023 development] and to address the legal issues after the fact," and that it "completed this work with the hope that it would make it more difficult to enforce the restrictions and more difficult to order the work be restored."  Under these circumstances, when a property

owner knowingly violates land use restrictions, injunctive relief that restores compliance is rarely considered oppressive. *See also Levy v. Bd. of Adjustment*, 369 P.2d 991, 995-96 (Colo. 1962) (holding that self-inflicted hardship is "at the very least a highly significant fact" in deciding whether a property owner should receive relief from the enforcement of a zoning ordinance); *Nopro Co. v. Town of Cherry Hills Village*, 504 P.2d 344, 349 (Colo. 1972) (holding there was no record support for finding that a developer would suffer a "substantial hardship" if made to comply with zoning restrictions because it purchased the land with full knowledge of the restrictions).

¶ 31    Finally, embedded within this equitable argument, VailPoint raises a separate compliance argument. Specifically, VailPoint contends that the court erred by concluding that its development was not a compliant "recreational" use under the Fifth Filing Covenants, arguing that the court (1) relied on an unpublished court of appeals opinion to interpret the term "recreational" and (2) rejected VailPoint's broader definition of "recreational" that encompassed private leisure. However, we need not reach either point because the district court found that the 2023 development

18

violated both the Fifth Filing Covenants and the Deed Covenant. Thus, even if the 2023 development complied with the Fifth Filing Covenants as a "recreational" use — an issue we do not decide — it would still run afoul of the Deed Covenant because the Deed Covenant does not contain an exception for recreational use.

## C. Permanent Injunction

¶ 32    VailPoint contends that the district court "erred by issuing an injunction" because the "Neighbors failed to establish any of the elements" for a permanent injunction and the court "had doubt" regarding each element. We are not persuaded.

### 1. Applicable Law

¶ 33    A party seeking a permanent injunction must show that "(1) the party has achieved actual success on the merits; (2) irreparable harm will result unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause to the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Langlois v. Bd. of Cnty. Comm'rs*, 78 P.3d 1154, 1158 (Colo. App. 2003).

## 2. Discussion

¶ 34 The district court did not abuse its discretion by granting injunctive relief requiring VailPoint to restore the enclosure to its pre-2023 condition.

- For the first element, the Neighbors did succeed on the merits. The court ruled in favor of the Neighbors that the 2023 development violated the Deed Covenant and Fifth Filing Covenants — a ruling we uphold on appeal.

- For the second element, the court determined that the Neighbors experienced "real, substantial, and [continuing]" irreparable harm. VailPoint had "significantly changed" the character of the fenced-in grassy area, despite knowing that the property was subject to restrictions. And this development had "a significant effect on aesthetics and the [Neighbors'] enjoyment of their property." *See K9Shrink, LLC v. Ridgewood Meadows Water & Homeowners Ass'n,* 278 P.3d 372, 379 (Colo. App. 2011) (upholding the court's finding of irreparable harm when the neighbors testified that the covenant violation interfered with their enjoyment of their properties). Given the scarcity of open space in Vail

Village, the court did not abuse its discretion by crediting the Neighbors' testimony that harm resulting from violating the Covenants could not be compensated monetarily.

- For the third element, the court weighed the harm to the Neighbors against the impact of imposing an injunction. The court acknowledged that VailPoint invested $1.2 to $1.5 million in the construction and recognized that the Neighbors' "sense of harm" was likely heightened by their frustration over what they perceived as VailPoint's covert construction of the enclosure.  Nevertheless, the court found that the harm to the Neighbors was real and "outweigh[ed] the harm that the injunction may cause to VailPoint" — in no small part because VailPoint "understood this risk when it did this project."  *See also* Restatement (Third) of Prop.: Servitudes § 8.3 cmt. b (A.L.I. 2000) (explaining that injunctive relief is often available to redress the violation of a restrictive covenant, the value of which can be "difficult to quantify," "impossible to replace," and inadequately "reflected by market values," when appurtenant to the ownership of land).

21

- For the fourth element, the court found that the injunction "supports the public interest of keeping the land vacant and undisturbed." *See id.* (explaining that injunctive relief should be available for violations of "restrictive covenants," especially "preservation servitudes," because a party should not be permitted to buy out of a servitude obligation if it continues to serve its purpose).

Each of these findings is well supported by the record as well as Colorado case law and thus warrants deference on appeal.

¶ 35    We are also unpersuaded by VailPoint's claim that the injunction should be reversed based on alleged doubt that the court expressed regarding each element. VailPoint relies on selective quotations from the court's comments to the parties on the final day of the bench trial to suggest uncertainty about granting injunctive relief. At that time, the court merely stated it had not yet made a decision and provided an estimated timeframe for its written order. But none of these remarks — including the court's conciliatory advice that the parties "live with the decision, move on, and enjoy the beautiful property that you worked hard to get" — reflect any genuine doubt. Indeed, all these comments were made

22

months before the court issued its written order that definitively granted injunctive relief.

### D. C.R.C.P. 8(c)

¶ 36 For the first time on appeal, VailPoint contends that the district court was required to "consider abandonment as a counterclaim for terminating" the Fifth Filing Covenants because VailPoint "mistakenly designated" abandonment of the Fifth Filing Covenants as only an affirmative defense. Specifically, VailPoint argues that the "court unjustly deprived VailPoint of a counterclaim" because C.R.C.P. 8(c) states that "[w]hen a party has mistakenly designated . . . a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." We decline to consider this argument.

### 1. Additional Background

¶ 37 In its answer, VailPoint asserted twenty-six affirmative defenses, including abandonment of both the Fifth Filing Covenants and the Deed Covenant. However, VailPoint pleaded abandonment as a counterclaim only with respect to the Deed Covenant. The trial management order — to which both parties agreed — left VailPoint's

counterclaim and affirmative defenses unchanged. After the bench trial, the court's written order addressed each affirmative defense, noting that abandonment is "not an affirmative defense" to violations of an easement or covenants and ultimately concluding that abandonment did not excuse VailPoint's violations of either the Fifth Filing Covenants or the Deed Covenant.[3] VailPoint did not file a post-trial motion challenging the court's disposition of its abandonment defense.

## 2. Discussion

¶ 38 VailPoint failed to preserve this issue for appellate review. To preserve an issue for review, a party must raise a timely and specific objection or request relief in the district court. *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 25. An objection or request for relief is timely if made contemporaneously with the allegedly erroneous action. *Id.* An objection is sufficiently specific if it provides the district court with a meaningful opportunity to address the alleged error. *Borquez v. Robert C. Ozer, P.C.*, 923 P.2d 166, 171 (Colo.

---

[3] VailPoint does not contest the district court's ruling that abandonment is not an affirmative defense to a claimed covenant violation.

App. 1995), *aff'd in part and rev'd in part on other grounds*, 940 P.2d 371 (Colo. 1997).

¶ 39     VailPoint neither objected to this alleged error nor gave the district court any opportunity to address it. On the contrary, VailPoint agreed to the trial management order, which listed abandonment of the Fifth Filing Covenants as a defense, and at no point in the proceedings did VailPoint ever raise the argument that it now asserts. *See* C.R.C.P. 16(f)(5) ("The Trial Management Order shall control the subsequent course of the trial."). Accordingly, we do not address this argument. *See Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal.").

E.     VailPoint's Remaining Contentions

¶ 40     First, VailPoint contends that the court "fell into [the Neighbors' unreasonable] narrative and made numerous errors of fact." These alleged factual errors include that (1) "VailPoint acted secretively" and (2) "VailPoint was aware of the restrictions." However, we will not disturb the district court's factual "findings if there is any evidence in the record supporting them." *Woodbridge*

25

*Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 24, *aff'd*, 2021 CO 56.

¶ 41    Both factual findings are supported by the record.  The court determined that VailPoint "attempted to limit public knowledge" of its improvements to the enclosure by failing to notify affected parties, erecting a privacy fence, and completing the vast majority of work during the off-season in just three to four months.  The court further found that VailPoint "took its actions knowing that [the enclosure] was subject to restrictions which could be enforced" based on its repeated attempts to develop the enclosure, its legal counsel's representations about the restrictions, statements in application materials, and efforts to secure waivers from the Neighbors.

¶ 42    VailPoint argues that George Solich, the manager of VailPoint, testified that he believed in good faith that he had obtained legal authority to develop the enclosure after the Vail Planning and Environmental Commission approved the Exemption Plat Application.  But the district court did not credit this testimony, and such credibility determinations are binding on appellate review.  *See In re Estate of Owens*, 2017 COA 53, ¶ 22 ("[A] trial court's

'determination of' a testifying witness' 'credibility [is] entirely within the purview of the trial court as the finder of fact and is binding upon' an appellate court." (quoting *People v. Fordyce*, 705 P.2d 8, 9 (Colo. App. 1985))).

¶ 43    Second, VailPoint argues that the court "erred by splitting its analysis of equitable defenses into before and after the [2023 development] based on an erroneous interpretation of the 1984 Amendment." VailPoint references the court's finding that the Neighbors waived any objection to the pre-2023 enclosure but not to the 2023 development. VailPoint then argues that the court's finding of waiver for the pre-2023 enclosure was improperly based on the assumption that the 1984 amendments allowed the fence.

¶ 44    This argument mischaracterizes the record. The district court found that the pre-2023 enclosure violated the Deed Covenant but that the Neighbors waived or consented to the violation by failing to object for sixty years. While the court initially suggested that the 1984 amendment may have permitted the pre-2023 enclosure under the Fifth Filing Covenants, it ultimately clarified that, even if the 1984 amendment did not allow the fence, the Neighbors had

still waived or consented to that violation through decades of inaction.

¶ 45     The court's different conclusion regarding the 2023 development did not rest on its interpretation of the 1984 amendment.  Instead, the court found no waiver or consent to the 2023 development because the Neighbors objected within four months — a reasonable delay considering VailPoint's efforts "to limit public knowledge" and the time required for the Neighbors "to learn of the extent of the project . . . [and] to investigate the options, develop a consensus, hire counsel, have counsel investigate legal options[,] and file a complaint."

¶ 46     Third, VailPoint contends that the district court's conclusion that "the [Deed Covenant and Easement are] still valid and enforceable inside the fence . . . equates to a finding that the [2023 development] somehow revived the [Deed Covenant and Easement] in the backyard."  VailPoint again points to the court's waiver discussion and cites Colorado law concerning the revival of extinguished easements.

¶ 47     VailPoint's characterization of events is inaccurate.  The district court found the Deed Covenant enforceable within the

enclosure (while concluding the Neighbors abandoned the Deed Easement), but the court neither extinguished nor "revived" the Deed Covenant. Rather, the court determined that the Deed Covenant had always burdened the property and continued to do so, finding that both the pre-2023 enclosure and the 2023 development violated its terms. As previously explained, the court concluded that the Neighbors had waived or consented to the pre-2023 enclosure by not objecting to it for sixty years and therefore exercised its equitable discretion to permit that enclosure to remain despite the Covenants.

¶ 48 To the extent VailPoint argues that the waiver of a prior violation of the pre-2023 enclosure terminates the Deed Covenant, VailPoint cites no authority — and we have found none — to support this position. Similarly, the argument that the court's exercise of equitable discretion to allow a prior violation results in a termination of the Deed Covenant is unavailing. *See Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992) ("The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility."). Accordingly, we perceive no

error with the court's determination that the Deed Covenant remains enforceable to prohibit the 2023 development.

¶ 49 Finally, VailPoint challenges the court's denial of its motion for a directed verdict, arguing that "the trial court's findings and conclusions were so manifestly against the weight of evidence as to compel a contrary result." We review a district court's denial of a directed verdict de novo. *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 885 (Colo. App. 2007). The district court must not grant a directed verdict "unless the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the moving party could be sustained." *Id.* In this case, the district court properly denied the motion for directed verdict because, as already discussed, its findings were amply supported by the evidence.

## III. Disposition

¶ 50 The judgment is affirmed.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.